No. 86-390

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

MARGARET MILLS,

   Appellant and Respondent,

 -vs-

COMMISSIONER OF INSURANCE,
ANDREA BENNETT,

   Respondent and Appelllant.

---

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Lewis & Clark,
      The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Kathy M. Irigoin, Auditor's Office and Commissioner
    of Insurance, Helena, Montana

  For Respondent:

    Emmons & Coder; H. William Coder, Great Falls,
    Montana

---

     Submitted on Briefs: Jan. 15, 1987

       Decided: April 16, 1987

Filed: APR 1 6 1987

        _Ethel M. Harrison_

          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

State Auditor Andrea Bennett, ex-officio, Commissioner of Insurance for the State of Montana appeals the order of the District Court, First Judicial District, County of Lewis and Clark, which reversed and remanded the Commissioner's order to revoke the license of Margaret Mills. We affirm the order of the District Court.

Margaret Mills was licensed as a resident life insurance agent for the sale of life and disability insurance in the State of Montana. In May, 1985, Ms. Mills was convicted by a Cascade County jury of felony theft involving personal property consisting of a snowmobile, two lounge chairs, a small hand washer and a wedge. In July, 1985, the Hon. Joel G. Roth ordered Ms. Mills to pay a fine of $500 and sentenced her to serve three years in the Montana State Prison. However, Judge Roth suspended all but the first 30 days of the sentence and gave credit to Ms. Mills for the 5 days she had already been incarcerated. He further ordered her to repay Cascade County for court costs in the amount of $1,176.46. Judge Roth noted that while the court was bound by the guilty verdict submitted by the jury, it was noteworthy that Ms. Mills had adamantly contended throughout the proceedings that she was not guilty of felony theft.

In July, 1985, the Commissioner of Insurance sent to Ms. Mills a notice of hearing on the proposed revocation of her life insurance agent license. On November 19, 1985, pursuant to that hearing, the hearings examiner issued his findings of fact, conclusions of law, and order that Ms. Mills' license be revoked. The order revoking the license was based solely on the ground that Ms. Mills had been convicted of a felony

involving moral turpitude, § 33-17-1001(1)(e), MCA, no other cause having been shown or considered. Ms. Mills' petition for rehearing was denied December 17, 1985, and she appealed to the District Court of Lewis and Clark County.

The District Court considered the law under Montana Code Annotated, Title 33, Ch. 17, Part 10 (Revocation of Licenses Under the Insurance Code), and Title 37, Ch. 1, Part 2 (Licensure of Criminal Offenders). The court held that the procedure outlined in the latter statutes controlled the licensing of a convicted felon. The court then reversed and remanded the case to the Commissioner.

The sole issue raised by the Commissioner on appeal is whether the District Court erred in holding that the Commissioner of Insurance must conduct an investigation pursuant to § 37-1-203, MCA, and make written findings pursuant to § 37-1-204, MCA, before revoking an insurance agent license under § 33-17-1001(1)(e), MCA?

The Commissioner urges a narrow reading of § 33-17-1001(1), MCA, which states in relevant part:

> Suspension, revocation, or refusal of license. (1) [T]he commissioner may suspend . . . or may revoke or refuse to continue any license issued under this chapter . . . if, after hearing . . . he finds that as to the licensee any one or more of the following causes exist:
>
> *   *   *
>
> (e) conviction, by final judgment, of a felony involving moral turpitude[.]

The Commissioner argues that by enacting this section, the legislature made conviction of a felony involving moral turpitude an independent ground for the suspension or revocation of an insurance agent license. In other words, the Commissioner should not be required to make a finding that the felony conviction relates to the public health,

- 3 -

safety, and welfare as it applies to insurance as an occupation, as suggested under § 37-1-203, MCA. The Commissioner further contends that §§ 37-1-201 through -205, MCA do not apply since those sections are general legislation pertaining to licensure of criminal offenders, while § 33-17-1001 is special legislation relating to the duties of the Commissioner of Insurance.

A general rule of statutory construction is that when several statutes may apply to a given situation, a court will attempt to adopt a construction of the statutes as will give effect to all. Schuman v. Bestrom (Mont. 1985), 693 P.2d 536, 538, 42 St.Rep. 54, 57. Statutes dealing with general, comprehensive legislation and those dealing with more specific legislation should, if possible, be harmonized, with a view to giving effect to a consistent legislative policy. Id. at 539, 42 St.Rep. at 57.

The role of this Court in construing and applying statutes is to effect the intention of the legislature. Thiel v. Taurus Drilling Ltd. 1980-II (Mont. 1985), 710 P.2d 33, 35, 42 St.Rep. 1520, 1522. We first look to the plain meaning of the words of the statutes in question. If the intent cannot be determined from the content of those statutes, we examine the legislative history. Id.

The literal reading of § 33-17-1001(1)(e) is that the Commissioner may revoke an agent's license if the agent has been convicted of a felony involving moral turpitude. The statute also requires the agent have a hearing before the license is revoked. Section 37-1-203, MCA, is equally clear: no licensing agency shall refuse to license a person solely on the basis of a previous criminal conviction. Further, §§ 37-1-203 and -204, MCA, require the licensing agency to find the criminal offense relates to the public health, welfare and safety as it applies to the licensed

- 4 -

occupation, to investigate whether or not the licensee has been sufficiently rehabilitated to warrant public trust, and to make explicit written reasons for the denial of a license. As noted by the District Court, it is questionable which statute is more particular in regard to the issue in this case. However, it is clear that the statutes governing the procedure for licensing ex-offenders was later, remedial legislation.

Title 33 is the Montana Insurance Code, enacted in 1959. Chapter 17 governs insurance agents, solicitors, adjusters, consultants and administrators. Part 10 provides grounds upon which the Commissioner of Insurance, after a hearing, may revoke a license issued under Chapter 17. Section 33-17-1001 has not been amended (with one exception, not relevant here) since 1959.

Title 37 is the section of the Montana Code which governs professions and occupations. Part 2 of Chapter 1 was enacted in 1979 from H.B. 395, entitled "An act to provide that a person convicted of a criminal offense who has served his sentence and is no longer under State supervision may be granted occupational licensure." Chapter 490, Laws of Montana (1975). There is a general presumption that the legislature would not pass meaningless legislation. Crist v. Segna (Mont. 1981), 622 P.2d 1028, 1029, 38 St.Rep. 150, 152. The purpose of the Act was to implement § 28, Art. II of the 1972 Montana Constitution, which states: "Laws for the punishment of crime shall be founded on the principles of prevention and reformation." The rationale behind the Act was to give ex-offenders the opportunity to rehabilitate themselves after they have paid their debt to society. Hearings on H.B. 395 before the Thirty-third Meeting of the House Judiciary Committee, statement by bill sponsor Representative Mike Meloy (February 17, 1975). One of the

problems faced by ex-offenders was that the licensing statutes, such as § 33-17-1001, automatically barred them from ever engaging in restricted license occupations, even though the offense with which the ex-offender had been charged had no relation to the licensed occupation. Hearings on H.B. 395 before the Senate Judiciary Committee, statement by Robert J. Campbell, Chairman of the Montana Bar Association (March 15, 1975).

The Act, now codified at § 37-1-203, provides:

> Criminal conviction shall not operate as an automatic bar to being licensed to enter any occupation in the state of Montana. No licensing authority shall refuse to license a person solely on the basis of a previous criminal conviction[.] (Emphasis added.)

The words of the statute emphasized above indicate the legislature intended to loosen the restrictions barring all opportunities for ex-offenders to find meaningful employment. A licensing agency still has the option of denying a license to an ex-offender, but such denial may only be made after an investigation and finding that the convicted offender has not been sufficiently rehabilitated as to warrant public trust. Section 37-1-203, MCA. When the licensing agency decides not to license an ex-offender, "the agency shall state explicitly in writing the reasons for the decision." Section 37-1-204, MCA.

The Commissioner of Insurance did not follow this procedure. Ms. Mills' license was revoked solely on the basis of her conviction of felony theft. No effort was made to ascertain whether Ms. Mills' conviction related to the public health, welfare, and safety as it applies to selling life and disability insurance. Testimony offered by the administrator of the licensing division indicated that the notice of hearing reciting the sentence and conviction order

of Ms. Mills was the only information he had received. He had no other personal knowledge or evidence that Ms. Mills was not competent or trustworthy. The hearings examiner's proposed findings of fact and conclusions of law stated merely that Ms. Mills was convicted of a felony involving moral turpitude. Such a finding is an insufficient basis upon which to hold that the conviction is related to the public health, welfare, or safety as it relates to the licensed occupation.

The judgment of the District Court is affirmed, and the case is remanded for further proceedings consistent with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 7 -

Mr. Justice John Conway Harrison, dissenting.

I would reverse and remand to the District Court ordering the revocation of the license.

Resolution of this case hinges simply upon whether the statutes quoted by respondent apply to and thereby modify the Commissioner's powers under § 33-17-1001, MCA. On their face, these statutes clearly deal only with the licensure of convicted felons. For them to have any bearing on this case, they must be found to be applicable to licensure <u>revocations</u> as well.

To this end, respondent quotes § 37-1-202, MCA, which states:

> It is the intent of the legislature and the declared policy of the state that occupational licensure be granted or revoked as a police power of the state in its protection of the public health, safety, and welfare.

However, I feel that application of basic and fundamental rules of statutory construction compels a holding that this statute does not render § 37-1-201 et seq., MCA, applicable to § 33-17-1001(1)(e), MCA. I would so hold.

The guiding principle of any rule of statutory construction must be to give effect to the intent of the legislature. Section 1-2-102, MCA; Missoula County v. American Asphalt, Inc. (Mont. 1985), 701 P.2d 990, 992, 42 St.Rep. 920, 922. Courts strive to accomplish this by giving to the words of a statute their plain and ordinary meaning and by adhering to the words of the statute. Section 1-2-101, MCA; State v. Hubbard (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333; Chennault v. Sager (1980), 187 Mont. 455, 461-62, 610 P.2d 173, 176.

I feel § 33-17-1001(1)(e), MCA, in plain and precise language, authorizes the Commissioner to revoke respondent's license. The majority's reasoning to the contrary is unclear. At page 4 of their opinion, the majority correctly notes that the role of this Court when engaged in statutory construction is first to look at the plain meaning of the statute's words. And one sentence later, the majority concedes that, "[t]he literal reading of § 33-17-1001(1)(e) is that the Commissioner may revoke an agent's license if the agent has been convicted of a felony involving moral turpitude." We should go no farther. Yet the majority then recites in great detail relevant legislative history as if an ambiguity exists. We should not strive to create statutory ambiguities where none exist.

Nothing within the language of § 37-1-202, MCA, modifies the Commissioner's authority granted under § 33-17-1001(1)(e), MCA. Section 37-1-202, MCA, merely illustrates that the legislature intended that the whole of occupational licensing fall within the police power of our state in its protection of the public health, safety and welfare. It is my opinion that nothing therein suggests that the provisions of its neighboring statutes, § 37-1-201 et seq., MCA, be made applicable to § 33-17-1001, MCA.

In my opinion, for this Court to hold otherwise in effect creates an implied modification of the Commissioner's authority under § 33-17-1001, MCA. Implied modifications, like implied revocations, are disfavored at law. We have long and consistently held that we will not find an implied repeal of a statute absent a clear legislative intent to that effect. See e.g., Holly v. Preuss (1977), 172 Mont. 422, 426, 564 P.2d 1303, 1306. The same must be said of an implied modification.

9

By enacting § 33-17-1001(1)(e), MCA, the Montana legislature made conviction, by final judgment, of a felony involving moral turpitude an independent ground for the suspension or revocation of an insurance agent's license. I find nothing within § 37-1-201 et. seq., MCA, which modifies or affects this authority. I would hold that the District Court erred by requiring the Commissioner to establish that the felony conviction relate to the public health, safety and welfare as it applies to insurance as an occupation.

I would reverse and remand with instructions that the District Court enter an appropriate order.

John Conway Harrison
Justice

10