No. 92-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JOEL R. GILPIN,

      Petitioner and Appellant,

vs

BOARD OF NURSING, DEPARTMENT
OF COMMERCE, STATE OF MONTANA,

      Respondent and Respondent.

FILED

SEP 22 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Richard Larson, Chronister, Driscoll & Moreen,
          Helena, Montana

      For Respondent:

          Steven J. Shapiro, Special Assistant Attorney
          General, Department of Commerce, Helena, Montana

Submitted on Briefs:  August 13, 1992

Decided:  September 22, 1992

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal of an administrative action of the Montana Board of Nursing, which permanently revoked the license of Joel R. Gilpin to practice in Montana as a registered professional nurse. The District Court for the First Judicial District, Lewis and Clark County, affirmed, but it deleted a provision that the revocation is permanent. Gilpin appeals to this Court. We affirm.

The issues are:

1. Does the Board have jurisdiction to revoke a Montana nursing license which expired before revocation?

2. Did the Board revoke Gilpin's Montana nursing license without affording him a proper hearing?

3. Did the Board properly consider criteria for licensure of criminal offenders in revoking Gilpin's nursing license?

Gilpin was licensed as a registered nurse in Montana from 1980 through 1990. The Board did not send him a license renewal application for 1991, and his license lapsed at the end of 1990.

In 1987, Gilpin was convicted of two counts of sexual assault upon eleven- and twelve-year-old girls. He was sentenced to four years' imprisonment on each count, to be served consecutively. In June 1988, as a result of his criminal conviction, the Board initiated a license disciplinary proceeding against him. At Gilpin's request, the disciplinary proceeding was delayed while he appealed

2

his criminal conviction to this Court and pursued a habeas corpus action in federal court.

This Court's opinion affirming Gilpin's criminal conviction sets forth the facts underlying the conviction. State v. Gilpin (1988), 232 Mont. 56, 756 P.2d 445. That opinion is a public record and as such was available to the Board.

In November 1990, the proceeding before the Board was reactivated. The parties submitted the matter on an agreed statement of facts. A hearing examiner heard the case and submitted findings, conclusions, and a recommended order to the Board. After hearing Gilpin's objections orally and receiving them in writing, the Board adopted the hearing examiner's findings, conclusions, and recommendations.

Gilpin appealed to the District Court. The court heard the parties' arguments and then issued its written memorandum and order affirming the decision to revoke Gilpin's license. However, the court deleted the provision that the revocation is permanent.

I

Does the Board have jurisdiction to revoke a Montana nursing license which expired before revocation?

Gilpin argues that the Board lost jurisdiction over him after his nursing license lapsed in 1990. He claims that the Board is statutorily empowered to take action only on an application for a nursing license or on an issued license, not on an expired license.

3

Section 37-8-431(3), MCA, provides that a lapsed nursing license may be reinstated by the Board upon satisfactory explanation for the failure to renew the license and upon payment of current fees. Section 37-1-141, MCA, provides that a lapsed occupational or professional license which is not renewed within three years of the most recent renewal date automatically terminates and a new original license must be obtained.

Because the above statutes give the Board the power to reinstate a nursing license for three years after it lapses, we conclude that the Board retains jurisdiction over a lapsed nursing license for three years following a failure to renew. This action took place within three years after Gilpin's license lapsed. We hold that the Board had jurisdiction to revoke Gilpin's license.

II

Did the Board revoke Gilpin's Montana nursing license without affording him a proper hearing?

Despite his consent to submit to the hearing examiner an agreed set of facts, Gilpin contends that he was entitled to a hearing before the Board on the merits of his case. He points out that, in the brief submitted to the Board in support of revoking his license, various harmful consequences were alleged as possible results of halting disciplinary proceedings. Gilpin maintains that a hearing should have been held to afford him an opportunity to rebut those "allegations of fact."

4

The material facts of this case were stipulated--that Gilpin stands convicted of sexually molesting two pre-teen girls. The results which were forecast if disciplinary proceedings were halted did not create material issues of fact. Gilpin was afforded a hearing before the Board at which he presented his arguments in opposition to the hearing examiner's findings and conclusions. We hold that Gilpin's criminal conviction and the facts to which he stipulated were a sufficient basis for summary judgment and that Gilpin was not entitled to any hearings in addition to those which he was given.

III

Did the Board properly consider criteria for licensure of criminal offenders in revoking Gilpin's nursing license?

Gilpin states that there is no indication, in either the record in this case or in this Court's decision in his appeal from his criminal conviction, of any connection between the conduct on which his criminal conviction was based and his nursing practice. He points out that the conduct occurred while he was off duty and away from his workplace. He quotes the following statutes dealing with the licensure of criminal offenders:

> **37-1-201. Purpose.** It is the public policy of the legislature of the state of Montana to encourage and contribute to the rehabilitation of criminal offenders and to assist them in the assumption of the responsibilities of citizenship. The legislature finds that the public is best protected when such offenders are given the opportunity to secure employment or to engage in a

5

meaningful occupation, while licensure must be conferred with prudence to protect the interests of the public.

**37-1-202. Intent and policy.** It is the intent of the legislature and the declared policy of the state that occupational licensure be granted or revoked as a police power of the state in its protection of the public health, safety, and welfare.

**37-1-203. Conviction not a sole basis for denial.** Criminal convictions shall not operate as an automatic bar to being licensed to enter any occupation in the state of Montana. No licensing authority shall refuse to license a person solely on the basis of a previous criminal conviction; provided, however, where a license applicant has been convicted of a criminal offense and such criminal offense relates to the public health, welfare, and safety as it applies to the occupation for which the license is sought, the licensing agency may, after investigation, find that the applicant so convicted has not been sufficiently rehabilitated as to warrant the public trust and deny the issuance of a license.

**37-1-204. Statement of reasons for denial.** When a licensing agency prohibits an applicant from being licensed wholly or partially on the basis of a criminal conviction, the agency shall state explicitly in writing the reasons for the decision.

**37-1-205. Licensure on completion of supervision.** Completion of probation or parole supervision without any subsequent criminal conviction shall be evidence of rehabilitation; provided, however, that the facts surrounding the situation that led to the probation or parole supervision may be considered as they relate to the occupation for which a license is sought and provided that nothing herein shall be construed to prohibit licensure of a person while he is under state supervision if the licensing agency finds insufficient evidence to preclude such licensure.

Under the statutes set forth above, the policy of this State is to protect the public health, safety, and welfare. Gilpin cites this Court's holding in Mills v. Commissioner of Insurance (1987),

6

226 Mont. 387, 736 P.2d 102, that a finding that Mills had been convicted of a felony involving moral turpitude (felony theft) was an insufficient basis upon which to hold that the conviction was related to the public health, welfare, or safety through the licensed occupation of insurance sales. Mills, 736 P.2d at 105.

In the present case, the hearing examiner concluded that "[a] crime of sexual assault, especially on two young girls, is, in my mind, ipso facto, sufficient grounds for revocation of his license." The Board adopted the hearing examiner's further conclusions that, by reason of his criminal conviction of sexually assaulting two young girls, Gilpin was guilty of unprofessional conduct as a nurse within the meaning of § 37-8-441(5), MCA, and was unfit to practice nursing by reason of negligence, habits, or other causes, within the meaning of § 37-8-441(2), MCA.

The District Court noted that even though the sexual assaults did not occur while Gilpin was acting as a nurse, the conviction for those offenses causes great concern for public health, welfare, and safety. The court reasoned that the practice of nursing, by its very nature, involves the care of patients and brings the nurse into close physical contact with patients, including possible contact with intimate body areas of patients who are young, old, male, and female. The court stated:

> Because of the nature of the profession of nursing, it is
> reasonable to conclude that the conviction of sexual as-

7

sault on a young girl makes one unfit to practice nursing within the meaning of § 37-8-441(2), MCA.

Section 37-1-203, MCA, provides that when a person has been convicted of a criminal offense which relates to the public health, welfare, and safety, that person shall be granted a professional or occupational license only if he or she has been sufficiently rehabilitated to warrant the public trust. There is nothing in the record to show that Gilpin has been rehabilitated. In fact, he was still serving his sentence of imprisonment at the time of the hearing before the hearing examiner. In that respect, this case may be further distinguished from Mills. All but thirty days of Mills' prison sentence was suspended and she was not incarcerated at the time her case was heard before the licensing agency.

We hold that, in revoking Gilpin's license, the Board properly considered the criteria for licensing criminal defendants.

We affirm the order of the District Court revoking Gilpin's license to practice in Montana as a registered professional nurse.

Chief Justice

8

We concur:

_John Conway Harrison_

_Karla M. Gray_

_P. C. McDonough_

_Jim Trieweiler_
Justices

9

September 22, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Richard Larson
Chronister, Driscoll & Moreen
208 North Montana Avenue
Helena, MT 59601

STEVEN J. SHAPIRO
Special Assistant Attorney General
Department of Commerce
111 North Jackson
Helena, MT 59620-0407

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
      Deputy