No. 96-199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


BRUCE L. ERICKSON, M.D.,

Petitioner and Appellant,

v.

STATE OF MONTANA ex rel.
BOARD OF MEDICAL EXAMINERS,

Respondent and Respondent.


APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas Honzel, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John C. Doubek; Small, Hatch, Doubek & Pyfer;
Helena, Montana

For Respondent:

Patricia I. England, Staff Attorney; Department of Commerce;
Board of Medical Examiners; Helena, Montana


Submitted on Briefs: March 4, 1997

Decided: May 6, 1997
Filed:


_____
Clerk


Justice Jim Regnier delivered the Opinion of the Court.

Bruce L. Erickson appeals from an order of the First Judicial District Court, Lewis and Clark County, dated March 13, 1996. The District Court's order upheld the Montana Board of Medical Examiners' revocation of Erickson's license to practice medicine. We affirm.

The issues on appeal are:

1.    Is a criminal conviction conclusive evidence of unprofessional conduct and

sufficient grounds for a revocation of a medical license under   37-3-323, MCA (1993)?

2.    Was the hearing examiner's conflict of interest prejudicial error requiring reversal of the Board of Medical Examiners decision to revoke Erickson's medical license?

## FACTUAL BACKGROUND

Erickson was a licensed Montana physician and board certified ophthalmologist who operated eye clinics in Great Falls and Helena.  On March 12, 1994, he was convicted by a federal jury of knowingly and willfully filing false, fictitious, or fraudulent claims for Medicare payment with the United States Department of Health and Human Services.

On March 17, 1994, the Montana Board of Medical Examiners served Erickson with a notice of proposed board action in which it sought to revoke his license.  The notice also included a motion and order of summary suspension of his license, based on his conviction and other alleged misrepresentations made to the Board on license renewal forms.

After being served with the notice, Erickson applied to the First Judicial District Court for a temporary restraining order, asking the court to enjoin the Board from enforcing the March 17, 1994, order of summary suspension.  The Board eventually stipulated to the entry of a preliminary injunction.

Erickson also requested a hearing before the Board pursuant to the Montana Administrative Procedure Act.  The Board appointed J. Dennis Moreen, a Helena attorney, as the hearing examiner.  On March 10, 1995, after an administrative hearing was held, the hearing examiner issued his findings of fact, conclusions of law, and proposed order which recommended revocation of Erickson's license to practice medicine.  On May 22, 1995, the Board adopted the examiner's recommendations and gave Erickson a two-week stay for the purpose of transferring patients and records to other physicians.  Erickson again applied to the District Court for a stay of the revocation pending judicial review of the Board's decision.  The stay was granted on June 8, 1995.

Erickson filed a petition for judicial review of the Board's decision on June 2, 1995.  While the petition was pending, the Ninth Circuit Court of Appeals affirmed his criminal conviction.  The Board notified the District Court of the Ninth Circuit's decision, arguing that since the conviction was no longer on appeal, it was conclusive evidence of unprofessional conduct and that further judicial review was unnecessary.  On March 13, 1996, the District Court affirmed the decision of the Board of Medical Examiners.  The District Court's decision was based solely on the criminal conviction. Erickson sought certiorari of the Ninth Circuit's decision to the United States Supreme Court which was denied on May 28, 1996.

Erickson appealed to this Court, arguing that the District Court erred by not conducting a full judicial review and by holding that a criminal conviction in and of itself was sufficient grounds for a license suspension.  Erickson was also granted leave to file a supplemental initial brief in which he alleged that the hearing examiner had a conflict of interest.  After consideration of the briefs, this Court remanded the case to the District Court for further proceedings on the conflict of interest issue.

The alleged conflict of interest arose from the following facts.  As hearing examiner,  Moreen conducted hearings on the Erickson case from October 3 through October 6, 1994.  In November 1994, Allen Chronister, one of Moreen's law partners, requested that Erickson send him all the medical records for "R.K."  This was apparently in connection with a potential medical malpractice claim.  On March 10, 1995, Moreen issued his findings of fact, conclusions of law, and proposed order in the Erickson case. On May 17, 1996, Moreen submitted an application for review to the Montana Medical Legal Panel on behalf of R.K. and against Erickson.

On November 27, 1996, the District Court issued its findings of fact and conclusions of law on remand.  The District Court concluded that the test to determine whether a hearing examiner should be disqualified for a conflict of interest is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the [hearing examiner's] impartiality."  The District Court decided that a reasonable person could harbor doubts about Moreen's impartiality in this case.

## ISSUE 1

Is a criminal conviction conclusive evidence of unprofessional conduct and sufficient grounds for a revocation of a medical license under 37-3-323, MCA (1993)?

When reviewing an administrative agency's findings of fact, this Court will defer to the agency's findings unless they are clearly erroneous. Findings of fact are clearly erroneous if they are not supported by substantial credible evidence. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. Our standard for reviewing conclusions of law of an agency or a district court, however, is simply to determine whether they are correct. This is because there is no discretion involved when a tribunal arrives at a conclusion of law, the tribunal either correctly or incorrectly applied the law. Steer, 245 Mont. at 474, 803 P.2d at 603.

Relying on 37-1-203, MCA, Erickson argues that the Board of Medical Examiners must ascertain whether his conviction relates to the public health, welfare, and safety before making its decision to revoke his medical license. Section 37-1-203, MCA, provides:

> Conviction not a sole basis for denial. Criminal convictions shall not operate as an automatic bar to being licensed to enter any occupation in the state of Montana. No licensing authority shall refuse to license a person solely on the basis of a previous criminal conviction; provided, however, where a license applicant has been convicted of a criminal offense and such criminal offense relates to the public health, welfare, and safety as it applies to the occupation for which the license is sought, the licensing agency may, after investigation, find that the applicant so convicted has not been sufficiently rehabilitated as to warrant the public trust and deny the issuance of a license.

In support of his position, Erickson cites Mills v. Commissioner of Insurance (1987), 226 Mont. 387, 736 P.2d 102. In Mills, we held that a license for an insurance agent could not be revoked solely for a conviction of a crime involving moral turpitude, but that the Commissioner of Insurance was required to first make findings on whether the conviction was related to public health, welfare, or safety under 37-1-203, MCA. The Board argues that under Mills, and the subsequent case of Gilpin v. Board of Nursing (1992), 254 Mont. 308, 837 P.2d 1342, a conviction alone could indeed constitute a bar to licensure.

In Mills and Gilpin, this Court did not distinguish between the statutory criteria for revocation of a license and the statutory criteria for issuing a license for the first time to a person with a previous criminal conviction or relicensing a person after a revocation. Therefore, Erickson's reliance on Mills seems well grounded. However, a closer review of the statutes applicable to license issuance and license revocation discloses that there are different considerations involved. The real question, overlooked in Mills and Gilpin, is whether 37-1-203, MCA, applies to, and thereby modifies, the Board of Medical Examiners' power to revoke a medical license under 37-3-323, MCA (1993).

Part 2, Chapter 1, of Title 37 deals with the licensure of criminal offenders and is found in the General Provisions section of Title 37, which deals with Professions and Occupations. The legislative history reveals that the rationale behind the enactment of 37-1-203, MCA, was to provide ex-offenders the opportunity to rehabilitate themselves after they have paid their debt to society. Hearings on H.B. 395 before the Thirty-third Meeting of the House Judiciary Committee, statement by bill sponsor Mike Meloy (February 17, 1975). For 37-1-203, MCA, to have any bearing in this case, it must be found to be applicable to licensure revocations, and in this instance, to the revocation of a medical license.

Chapter 3 of Title 37 governs the medical profession. Section 37-3-323, MCA (1993), sets forth the procedure that the Board of Medical Examiners must follow when revoking or suspending a medical license. Under 37-3-323, MCA (1993), the Board may investigate when there is a "reason to suspect that a person having a license or certificate to practice medicine" has engaged in a practice or has committed an offense listed under subsection (1). In this case, Erickson is appealing the decision of the Board, affirmed by the District Court, to revoke his medical license. Erickson is not a rehabilitated ex-offender appealing the denial of the issuance or reissuance of his medical license due to a past criminal conviction. In both Mills and Gilpin, we improperly mixed

the statutory criteria for revocation and the statutory criteria for licensing a person previously convicted of a criminal offense in the first instance or relicensing after a revocation.  This was wrong and we, therefore, hold that   37-1-203, MCA, does not apply to the revocation of a license, such as in Erickson's case.

This matter originated when the Board of Medical Examiners served notice on Erickson that it would revoke his license for, among other things, his conviction in the Federal District Court for Medicare fraud in violation of 18 U.S.C.   287 (1994).  The Board adopted the hearing examiner's further conclusions that, by reason of his criminal conviction of Medicare fraud, Erickson was guilty of unprofessional conduct as a doctor within the meaning of   37-3-322(7), MCA (1993), and was unfit to practice medicine. Section 37-3-322(7), MCA (1993), defined "unprofessional conduct" to include a "conviction of an offense involving moral turpitude or conviction of a felony involving moral turpitude, and the judgment of the conviction, unless pending on appeal, is conclusive evidence of unprofessional conduct."  The District Court affirmed the Board's order.

The precise language of   37-3-323(4), MCA (1993), authorized the Board to revoke Erickson's license.  Section 37-3-323(4), MCA (1993), stated in relevant part:

> At the hearing, the board shall adopt a resolution finding the accused guilty
> or not guilty of the matters charged. . . . If the board finds that the offenses
> or conditions referred to in 37-3-322 . . . do exist and the person is found
> guilty, the board shall:
>
>      (a)    revoke the person's license[.]

Under a straightforward statutory analysis, Erickson's conviction was "unprofessional conduct" as defined in   37-3-322(7), MCA (1993), and conclusive evidence of the same.  Section 37-3-323(4), MCA (1993), requires by the use of the word "shall" that the Board can revoke a license if an offense or condition referenced in   37-3-323, MCA (1993), exists and the licensee is guilty of it.  Nothing in   37-3-323, MCA (1993), refers to or suggests that there are additional criteria which must be considered before a license can be revoked.  Nor is there any cross-reference in   37-3-323, MCA (1993), to   37-1-203, MCA.

Both the legislative history and the statutory framework disclose that   37-1-203, MCA, and   37-3-323, MCA (1993), serve different purposes.  Section 37-1-203, MCA, was passed by the Legislature to provide ex-offenders, who have lost their license or are seeking a license for the first time, an opportunity to rehabilitate themselves after they have paid their debt to society.  Section 37-3-323, MCA (1993), provides the criteria to be followed by the Board of Medical Examiners in the revocation or suspension of a medical license.  A person who has had his license revoked under   37-3-323, MCA (1993), as a result of a criminal conviction would be entitled to be considered under the provisions of   37-1-203, MCA, when he has been rehabilitated and seeks a new license.

Therefore, this Court is not persuaded by Erickson's argument that the Board of Medical Examiners must make a determination whether a conviction specifically relates and affects the public's health, safety, and welfare before action may be taken to revoke a license.  Furthermore, we expressly overrule Mills v. Commissioner of Insurance (1987), 226 Mont. 387, 736 P.2d 102, which holds that a license cannot be revoked solely for conviction of a felony involving moral turpitude, but requires a further finding that the conviction was related to public health, welfare, or safety.  We also overrule Gilpin v. Board of Nursing (1992), 254 Mont. 308, 837 P.2d 1342, insofar as it relied on Mills in addressing a revocation rather than a licensing of a person previously convicted of a criminal offense in the first instance or a relicensing after a revocation.
ISSUE 2
Was the Hearing Examiner's conflict of interest prejudicial error requiring reversal of the Board of Medical Examiners' decision to revoke Erickson's medical license?

We previously remanded this case to the District Court for additional findings of fact and conclusions of law regarding the conflict of interest claim brought by Erickson. Erickson argues that the hearing examiner had a conflict of interest which requires reversal of the hearing examiner's findings and a remand to the Board of Medical Examiners.  The Board contends that Erickson bears the burden of proving that a

substantial right was prejudiced by the conflict of interest and that such a showing has not been made.

On remand, the District Court relied on 2-4-611(4), MCA, regarding the disqualification of hearing examiners, and decided that a person could reasonably question the hearing examiner's impartiality in this case. Section 2-4-611(4), MCA, states:

> On the filing by a party . . . in good faith of a timely and sufficient affidavit of personal bias, lack of independence, disqualification by law, or other disqualification of a hearing examiner or agency member, the agency shall determine the matter as a part of the record and decision in the case. The agency may disqualify the hearing examiner or agency member and request another hearing examiner pursuant to subsection (2) or assign another hearing examiner from within the agency. The affidavit must state the facts and the reasons for the belief that the hearing examiner should be disqualified and must be filed not less than 10 days before the original date set for the hearing.

Erickson first raised the issue of the hearing examiner's alleged conflict of interest in his supplemental brief filed with this Court, long after the hearing was held.

On remand, the District Court should have addressed the issue under 2-4-704(1), MCA, rather than under 2-4-611(4), MCA. Under this section, the alleged conflict of interest could be addressed as an irregularity in procedure before the agency and an alleged "unlawful procedure" or "affected by other error of law." However, this error of procedure was harmless to the District Court's analysis and findings.

Although the District Court found that the hearing examiner had a conflict of interest, this Court concludes that the substantial rights of Erickson were not prejudiced by the conflict of interest. The mere existence of an error does not mandate reversal; the error must cause substantial prejudice. In re Petition of Carruthers v. Board of Horse Racing (1985), 216 Mont. 184, 188, 700 P.2d 179, 181. Here, Erickson cannot show prejudice. As discussed above, the conviction, which is not pending on appeal, is conclusive evidence of unprofessional conduct. Erickson can show no prejudicial effect of any conflict of interest by the hearing examiner because of the conclusive nature of the evidence against him. Where the evidence is conclusive and objective, bias or conflict of interest on the part of a hearing examiner will not adversely affect the outcome of the case at hand.

We hold that, in revoking Erickson's license, the Board of Medical Examiners and the District Court properly considered the criteria for the revocation of a license under 37-3-323, MCA (1993).

We affirm the order of the District Court revoking Erickson's license to practice medicine in Montana.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ THOMAS A. OLSON
    District Judge sitting for Chief Justice J. A. Turnage
/S/ JOHN S. HENSON
    District Judge sitting for Justice William E. Hunt, Sr.
/S/ JOHN W. WHELAN
    District Judge sitting for Justice W. William Leaphart