>

No. 96-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


MILTON E. HICKLIN,

Plaintiff and Appellant,

v.

CSC LOGIC, INC., A TEXAS CORPORATION, d/b/a, LOGIC
MANAGEMENT SERVICES, INC., and THE PENNSYLVANIA LIFE
AND HEALTH INSURANCE GUARANTY ASSOCIATION,

Defendants and Respondents.



APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John M. Morrison; Meloy & Morrison; Helena, Montana

For Respondents:

Sarah R. Saldaa and Anne Hilbert; Baker & Botts;
Dallas, Texas; and Mark S. Williams; Williams & Ranney;
Missoula, Montana  (for CSC Logic, Inc.)

Stephen M. Frankino; Hughes, Kellner, Sullivan & Alke;
Helena, Montana (for Pennsylvania Life & Health)


Submitted on Briefs: April 17, 1997

Decided:   July 2, 1997

Filed:

_____
Clerk


Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Milton E. Hicklin, filed a complaint in the District Court for the First Judicial District in Lewis & Clark County in which he sought damages from the respondents, CSC Logic, Inc. ("CSC") and the Pennsylvania Life and Health Insurance Guaranty Association ("PLHIGA"), pursuant to 33-18-242, MCA. The respondents failed to appear. On that basis, the District Court entered a default judgment against the respondents and awarded damages to Hicklin. When Hicklin sought to supplement the record, the respondents appeared and moved the District Court to vacate the default judgment entered against them. The District Court granted that motion. Hicklin appeals. We reverse the judgment of the District Court and remand the case to that court for proceedings consistent with this opinion.

The sole issue on appeal is whether the District Court erred when it concluded that it lacked subject matter jurisdiction to entertain Hicklin's claim and, on that basis, granted the respondents' motion to vacate the default judgment entered against them.

FACTUAL BACKGROUND

In 1989, Milton Hicklin purchased a vehicle for which financing was provided by First Interstate Bank of Billings. The loan was taken on May 31, 1989, and was to be repaid by monthly payments, the last of which was due on June 15, 1994. To insure repayment of the loan, Hicklin purchased a disability insurance policy from the Life Assurance Company of Pennsylvania ("LACOP"), for which he paid a single, lump-sum premium. In return, LACOP agreed to make monthly payments to First Interstate in the amount of $251.92 in the event that Hicklin became disabled.

On January 10, 1991, the Commonwealth Court of Pennsylvania declared LACOP insolvent. The liquidation order appointed the Pennsylvania Insurance Commissioner "liquidator" of LACOP's property, assets, contracts, and rights of action. Pursuant to the Pennsylvania Life and Health Guaranty Association Act (see 40 P.S. 1801, et seq.), the Commissioner assigned its statutory duties to PLHIGA, an unincorporated association created by statute which guarantees the obligations of insolvent health and life insurance companies. The liquidation order, therefore, gave PLHIGA control of LACOP's assets and directed PLHIGA to proceed with the liquidation of LACOP in accordance with Article V of Pennsylvania's Insurance Department Act, codified at 40 P.S. 221.1-221.63.

In an undated letter, PLHIGA informed Hicklin that LACOP had been declared insolvent. The letter further advised him that PLHIGA had assumed LACOP's contractual obligations, including his disability policy, and that any inquiries regarding

his policy or benefits should be directed to CSC, a Texas corporation acting as a third-party administrator.

In February 1993, Hicklin underwent a microsurgical laminotomy, following which he was disabled. Accordingly, he submitted a claim for disability insurance payments. PLHIGA and CSC accepted liability and began making payments to First Interstate on his behalf. However, of the seventeen remaining payments, fourteen were delinquent. Additionally, PLHIGA and CSC refused to make the final payment.

On August 2, 1994, Hicklin filed a complaint in the District Court. He claimed that PLHIGA's and CSC's claims-handling practices violated provisions of the Montana Unfair Trade Practices Act, found at 33-18-201, MCA, and that those violations caused him substantial harm, including delayed credit for a home he was building and, therefore, increased building costs for financing and materials. On that basis, he asserted that he was entitled to compensatory and punitive damages.

PLHIGA and CSC were both served with notice, but failed to appear. Accordingly, Hicklin filed a notice of default. Again, however, both defendants failed to respond. The District Court entered a default judgment and, after a hearing, issued its findings of fact and conclusions of law regarding liability and damages. The District Court determined that Hicklin is entitled to damages in the following amounts: $36,000 for lost interest; $8,000 for increased cost of lumber; $251.92 for the final loan payment; $140 in late payment penalties; and $10,000 for emotional distress. The District Court also awarded him punitive damages pursuant to 27-1-221, MCA.

Hicklin attempted to enforce his judgment. He was informed, however, that a specific finding with regard to jurisdiction would facilitate his effort to enforce the judgment against CSC. On that basis, Hicklin filed a motion to supplement the District Court's findings of fact and conclusions of law.

Respondents subsequently appeared for the first time and moved the District Court to vacate the default judgment entered against them. In support of that motion, they asserted that the Montana District Court does not have subject matter jurisdiction over Hicklin's claims and, therefore, that the default judgment entered against them is void and must be vacated.

The District Court agreed with the respondents and, on that basis, granted respondents' motion pursuant to Rule 60(b)(4) and (6), M.R.Civ.P.

## DISCUSSION

Did the District Court err when it concluded that it lacked subject matter jurisdiction to entertain Hicklin's claim and, on that basis, granted respondents' motion to vacate the default judgment entered against them?

When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; In re Matter of Kovatch (1995), 271 Mont. 323, 326, 896 P.2d 444, 446; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

The January 10, 1991, liquidation order which declared LACOP insolvent appointed the Pennsylvania Insurance Commissioner "liquidator" of LACOP's property, assets, contracts, and rights of action. Pursuant to the Pennsylvania Life and Health Guaranty Association Act (see 40 P.S. 1801 et seq.), the Commissioner assigned its statutory duties to PLHIGA and its agent, CSC. The liquidation order, therefore, gave PLHIGA control of LACOP's assets and directed PLHIGA to proceed with the liquidation of LACOP in accordance with Article V of Pennsylvania's Insurance Department Act, codified at 40 P.S. 221.1-221.63. The liquidation order also made the following provision for jurisdiction over claims against LACOP:

No action at law or equity shall be brought against the Defendant [LACOP] in this Commonwealth or elsewhere, nor shall any such existing action be maintained or further presented after issuance of this Order. All actions currently pending against the Defendant in the courts of the Commonwealth of Pennsylvania are hereby stayed. All actions against the Defendant shall be submitted and considered as claims in this liquidation proceeding.

Section 221.58 of Pennsylvania's Insurance Department Act provides as follows: Claims of nonresidents against Insurers domiciled in this state

(a) In a liquidation proceeding begun in this Commonwealth against an insurer domiciled in this Commonwealth, claimants residing in foreign countries or in states not reciprocal states must file claims in this Commonwealth, and claimants residing in reciprocal states may file claims either with the ancillary receivers, if any, in their respective states, or with the domiciliary liquidator. In reciprocal states, where an ancillary receiver has been appointed, a guaranty association of that state must file its claims with the ancillary receiver. Claims must be filed on or before the last dates fixed for the filing of claims in the domiciliary liquidation proceeding.

(b) Claims belonging to claimants residing in reciprocal states may be proved either in the liquidation proceeding in this Commonwealth as provided in this article, or in ancillary proceedings, if any, in the reciprocal states. If notice of the claim and opportunity to appear and be heard is afforded the domiciliary liquidator of this Commonwealth as provided in section 559(b) with respect to ancillary proceedings in this Commonwealth, the final allowance of claims by the courts in ancillary proceedings in reciprocal states shall be conclusive as to amount and as to priority against special deposits or other security located in such ancillary states, but shall not be conclusive with respect to priorities against general assets under section 544.

(Emphasis added, footnote omitted.)

The District Court concluded that, pursuant to 33-2-1303(15), MCA, and 40 P.S. 221.3, Montana is a "reciprocal state," and that since an ancillary receiver has not been

appointed in Montana, Hicklin is required to file his case in Pennsylvania. On that basis, the court concluded that it lacked the requisite subject matter jurisdiction over Hicklin's case. Accordingly, the court granted the respondents' motion and vacated the default judgment entered against them.

We conclude, however, that neither the January 10, 1991, liquidation order, nor Article V of Pennsylvania's Insurance Department Act, applies to the claims for which Hicklin was awarded judgment. Hicklin is not proceeding against LACOP, does not claim entitlement to LACOP's assets, property, or estate, and is not attempting to enforce a contractual obligation incurred by LACOP prior to when it was declared insolvent. Rather, the District Court's judgment is based upon PLHIGA's and CSC's claims-handling practices and their violations of the Montana Unfair Trade Practices Act. In essence, the judgment is unrelated to the liquidation of LACOP and the accompanying liquidation proceedings; instead, it focuses on PLHIGA's and CSC's independent torts committed subsequent to LACOP's liquidation.

Respondents also contend that they are entitled to immunity from Hicklin's claims pursuant to 40 P.S. 991.1715. However, any immunity provided by that statute was merely a defense to Hicklin's claim. It does not relate to the District Court's subject matter jurisdiction, as we have explained that limitation. Wippert v. Blackfeet Tribe (1993), 260 Mont 93, 102, 859 P.2d 420, 425. Since the District Court found no nonjurisdictional basis for setting aside the default judgment, the respondents' affirmative defenses were waived when not raised in a timely manner in response to Hicklin's complaint.

We hold, therefore, that the District Court erred when it concluded that it did not have subject matter jurisdiction and, on that basis, granted the respondents' motion to vacate the default judgment entered against them. Accordingly, the judgment of the District Court is reversed and the case is remanded to that court for proceedings consistent with this opinion.

/S/   TERRY N. TRIEWEILER

We Concur:

/S/   JIM REGNIER
/S/   JAMES C. NELSON
/S/   WILLIAM E. HUNT, SR.
/S/   KARLA M. GRAY