HONORABLE BUYSKE, District Judge,
specially concurring.
I concur in the result of the majority opinion, but not in all that is stated in that opinion. I believe the path the majority chose to take to that result runs too broadly through a factual analysis and invites *117 future litigants to view district court proceedings as a means to do what should have been done at the administrative agency level — develop the record. I would hold the District Court erred as a matter of law in concluding, in effect, the decision of the Board of Land Commissioners approving the land exchange at issue here was not arbitrary.
Although the matter was put before the District Court via a motion for summary judgment, the District Court chose to consider and rule on the matter as a judicial review of the administrative decision of the Board. The District Court could not make factual findings as those would be beyond the purview of that proceeding, hence its decision to uphold the decision of the Board is one of law. This Court’s review of legal decisions is plenary as no exercise of discretion is necessary to those decisions — the legal conclusion is either correct or not. Hicklin v. CSC Logic, Inc. (1997), [283 Mont. 298], 940 P.2d 447, 449; Erickson v. State ex rel. Bd. of Medical Examiners (1997), [282 Mont. 367], 938 P.2d 625, 628. When conducting its plenary review of a district court’s review of an informal administrative decision, this Court follows the same standard as the district court, namely, does the record before the administrative body establish it acted arbitrarily, capriciously, or unlawfully. North Fork Pres. v. Department of State Lands (1989), 238 Mont. 451, 458-59, 778 P.2d 862, 867. The administrative decision is arbitrary and capricious if it was not based upon a consideration of all relevant factors and if there has been a clear error of judgment. Citizens to Preserve Overton Park, Inc. v. Volpe (1971), 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136, 153.
The authority of the Board of Land Commissioners is established by the Montana Constitution:
The governor, superintendent of public instruction, auditor, secretary of state, and attorney general constitute the board of land commissioners. It has the authority to direct, control, lease, exchange, and sell school lands and lands which have been or may be granted for the support and benefit of the various state educational institutions, under such regulations and restrictions as may be provided by law.
Article X, Section 4, Mont. Const.
Section 77-1-202(1), MCA, echoes the constitutional authority of the Board when it states:
The board shall exercise general authority, direction, and control over the care, management, and disposition of state lands and, subject to the investment authority of the board of investments, the funds arising from the leasing, use, sale, and disposition of *118 those lands or otherwise coming under its administration. In the exercise of these powers, the guiding principle is that these lands and funds are held in trust for the support of education and for the attainment of other worthy objects helpful to the well-being of the people of this state as provided in The Enabling Act. The board shall administer this trust to secure the largest measure of legitimate and reasonable advantage to the state.
A further “regulation” or “restriction” provided by law with respect to the actions of the Board is enumerated in § 77-2-203(2), MCA:
If the requirements of subsection (1) and 77-2-204 are met, state lands bordering on navigable lakes and streams or other bodies of water with significant public use value may be exchanged for private land if the private land borders on similar navigable lakes, streams, or other bodies of water.
The record before the District Court and this Court makes clear the Board did not believe the requirements of § 77-2-203(2), MCA, applied to this proposed land exchange transaction. Obviously, § 77-2-203(2), MCA, does apply to this land exchange transaction, and the conclusion of the Board to the contrary is a clear error of legal judgment. This error necessarily affected the development and consideration of the record upon which the Board based its April 15,1996, decision to approve the exchange. The Board could not have considered the elements of § 77-2-203(2), MCA, when its decision was made as the Board did not understand § 77-2-203(2), MCA, to apply to the proposed transaction.
Applying the review standards noted above to this situation, I hope I restate the obvious when clarifying that an administrative board must consider relevant factors prior to reaching its decision and not after that decision has been made. In this case it is undisputed that the Board approved the land exchange and then considered the similarity of the significant public use values of the waterways in question. The supplementary adoption of relevant evidence, when that evidence is statutorily required for lawful decision making, is unacceptable.
The Board is entrusted by the public with fiduciary control over Montana’s public trust land. To disregard a statute governing the maintenance of that trust in reaching a decision affecting the trust corpus, and then to provide after-the-fact-of-the-decision findings to justify compliance with the previously disregarded statute, is a not insignificant breach of the Board’s obligation to the public. Regardless of the manner in which the supplementary findings were adopted or *119 the validity of facts supplemented to the record, the process is of such unseemly appearance as to be arbitrary as a matter of law. The statute ignored by the Board in making the decision to approve this land exchange is a direction from the citizens of this State that certain factors need be considered, and certain assurances confirmed, with respect to the exchange of their public trust lands for private lands. The citizens of this State can demand nothing more, and expect nothing less, than to have the governmental entities of the State follow the valid directions of the governed.
The Board has a statutory obligation to make certain, when it trades public lands that contain navigable lakes and streams or other bodies of water with significant public use value, the State of Montana receives lands with similar bodies of water. The Board’s refusal to consider § 77-2-203(2), MCA, during its decision making process and its attempt to justify its decision to approve the land exchange with supplementary hearings regarding § 77-2-203(2), MCA, constitutes an arbitrary failure of this statutory obligation.
I would remand this matter to the District Court for its return to the Board of Land Commissioners with instructions to reconsider its decision regarding this land exchange and to properly hear and consider evidence as to the significant public use values of the bodies of water upon the lands to be exchanged.