No. 84-156

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

JOHN CHARLES SCHUMAN,

Petitioner and Appellant,

-vs-

LORRIE DIAN BESTROM,

Respondent and Respondent,

and

J.L.B., Minor Child.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Harris, Morin & Collins; Robert P. Morin argued,
Billings, Montana

For Respondent:

James J. Sinclair argued, Billings, Montana

Guardian Ad Litem:

Ted Lechner, Billings, Montana

Submitted: October 31, 1984

Decided: January 3, 1985

Filed: JAN 3 - 1985

Ethel M. Harrison
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

John Charles Schuman appeals from that portion of a paternity action judgment of the District Court, Thirteenth Judicial District, Yellowstone County, granting sole custody of his son, JLB, to the child's mother, Lorrie Dian Bestrom, and from the visitation schedule of father to child, established by the District Court.

John (father) filed his complaint in District Court, seeking to establish his paternity of JLB, requesting joint custody, liberal visitation, and provisions of child support. Lorrie (mother) filed an answer and crossclaim seeking to terminate the father's rights to JLB.

The District Court appointed Ted Lechner as guardian ad litem of JLB.

The District Court determined that the sole custody of the child should go to the mother, with scheduled visitation rights awarded to the father; that the father should pay the sum of $150 per month to the mother as support for the child; the father should make a further payment of $461.98 to the mother as reimbursement for costs attendant to the birth of the child; and that the father should maintain an accident and health policy extended to cover the child.

The father appeals from that portion of the judgment relating to the sole custody granted to the mother and the visitation rights given to him. On consideration, we have concluded to affirm the District Court.

Issues raised by the father are these:

1) The District Court erred in awarding sole custody of the minor child to the mother;

- 2 -

2) The District Court erred in denying the natural father reasonable visitation privileges with the minor child; and,

3) The District Court's determination of child custody and visitation denied the father equal protection of the laws.

John and Lorrie began dating in June of 1980. A son, JLB was born to them on August 18, 1982. Both parties agree that John is the child's natural father. Although they never married, John and Lorrie maintained a relationship until March 1983. During that time, John and JLB developed a close father-son relationship. John's family also developed a close relationship with the baby. John paid no child support, but did purchase both maternity and baby items for Lorrie and the baby.

After the split of the couple, the father had the right to visit the child on an agreed schedule. In approximately three months, however, the agreed schedule was not adhered to because of the mother's dissatisfaction with the arrangement. She remarried in October 1983, after the filing of the paternity action by the father. From October until the time of the action the mother has resided in Zortman, 165 miles from Billings, where the father and mother had been together.

I

The father argues that the grant of sole custody to the mother was incorrect because the District Court treated him differently as an unwed father from how he would have been treated had he been married to the mother; that the district judge used only Ch. 6, Title 40, MCA, the Uniform Parentage Act, in determining custody, rather than relying on the test for joint custody set forth in Ch. 4, Title 40, MCA. The

- 3 -

father further argues the district judge failed to address the factors relating to the best interests of the child, found in § 40-4-212, MCA. He also argues that the district judge erred in failing to set forth reasons for denying the joint custody as required in §§ 40-4-222 through 224, MCA.

The mother responds that the district judge did not err in granting her sole custody, that the evidence does not support an award of joint custody because the parents do not cooperate well with each other, and the distance they live apart and their divergent religious views should be considered.

In Montana, the statutory procedure for determining the paternity of a child born out of wedlock is found in the Uniform Parentage Act, §§ 40-6-101 through 135, MCA. Under § 40-6-107, MCA, any interested party may bring an action for the purpose of determining the existence or nonexistence of the father and child relationship. Such an action is a civil action, § 40-6-115, MCA, and the power of the District Court to enter a judgment or order is found in § 40-6-116, MCA. That section includes the following provision:

"(3) The judgment or order may contain any other provision directed against the appropriate party to the proceeding concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. The judgment or order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement." (Emphasis added.)

In another portion of the code, it is provided in our statutes that in custody disputes involving both parents of a minor child, custody shall be awarded "according to the best interests of the child" to both parents jointly or to either parent. Section 40-4-223, MCA. If an award is made to

either parent, the statute requires the court to consider the factors set out in § 40-4-212, MCA. Included in those factors set out in the latter statute are the wishes of the child's parents as to custody, the wishes of the child, the interaction and the relationship of the child with the parent and other persons affecting his best interest, the child's adjustment to his home, school and community and the mental and physical health of all individuals involved. We have held that when a court is considering the factors under § 40-4-212, MCA, it should set forth the bases upon which the court determines custody. Cameron v. Cameron (Mont. 1983), 641 P.2d 1057, 1060, 39 St. Rep. 485, 488; Milanovich v. Milanovich (Mont. 1982), 655 P.2d 959, 39 St.Rep. 1554.

When several statutes may applies to a given situation, such a construction, if possible, is to be adopted as will give effect to all. Section 1-2-101, MCA.

The same rules that apply to harmonizing real or apparent conflicts within the internal language of a statute should also apply to real or apparent conflicts between different portions of the code touching the same subject. It is good statutory construction law that where one part of the law deals with a subject in general and comprehensive terms, while another part of it deals in a more minute and definite way, the two parts should be read together and, if possible, harmonized, with a view to giving effect to a consistent legislative policy. City of Butte v. Industrial Accident Board (1916), 52 Mont. 75, 156 P. 130; Stadler v. City of Helena (1912), 46 Mont. 128, 127 P. 454.

The specific power given to the District Court to determine custody of a child in a paternity case is found in § 40-6-116(3), supra. The specific power of a court to

consider joint custody of a minor child in disputed custody cases is found in § 40-4-224, MCA. In either case, the statute determines that custody shall be decided in the "best interests of" the child. We see no conflict in the bases for such decisions, since both are bottomed on the best interest of the child, and find no reason to fault the District Court for determining custody in this case under the paternity provisions, since this is a paternity case.

Moreover, the District Court gave sufficient reasons for its determination to award sole custody to the mother. The District Court adopted the testimony of Ted Lechner, an acknowledged expert in the field. The court found that his testimony indicated that a "bonding of the mother and the child was most important for the child at this time," more important the court found than a bonding between the father.

Neither the statutes nor our case law have developed the specific rights and responsibilities of parents who share a joint custody arrangement over a minor child and this case does not require us to make such determinations; nonetheless, it seems clear that joint custody will not be satisfactory unless it exists between parents willing to cooperate with each other in custody matters. Lembach v. Cox (Utah 1981), 639 P.2d 197, 200. Where the parties do not agree on joint custody, or the District Court determines that joint custody is not suitable, then the best interests of the child require, and the statutes provide, that the custodial parent determines the child's upbringing, his education, health, care and religious training, unless specifically limited by the District Court. Section 40-4-218, MCA.

The father has failed to demonstrate to us that the District Court, by applying the Uniform Parentage Act

provisions to its determination of custody, instead of the provisions applicable to an ordinary marital dissolution case has not acted in the best interests of the child. We therefore find no merit in the issue regarding sole custody.

## II

For much the same reasons, the father contends that the District Court's determination of his visitation rights with the child are prejudiced against him because the court applied its power under paternity cases, rather than under provisions relating to visitation disputes in marital dissolution or other child custody cases.

Under this issue, the father maintains that the District Court should have utilized § 40-4-217, MCA, instead of § 40-6-116, MCA; that the schedule of visitation permitted to the father was not "reasonable" as required under § 40-4-217; that the schedule prevents the father from having visits with his child on important holidays throughout the year and on weekends and that the District Court did not explain its reasons for so "restricting" his visitation rights.

Although the court clearly determined visitation under § 40-6-116, relating to paternity actions, we see no detriment to the father in the District Court determining such visitation under the test of the best interests of the child, the same test for determining the best interests of the child under § 40-4-212, MCA.

The father claims he was deprived of visitation with his son on Christmas Eve, Christmas Day, Thanksgiving, the 4th of July, Easter and on alternating weekends. The District Court granted the father visitation through a four-day weekend over Memorial Day, and a four-day weekend on Labor Day, and further visitations from December 19 to December 22 of each

year and for 2 weeks during the summer, such weeks not to be consecutive.

The District Court gave reasons for so decreeing the visitation rights. The court relied on the testimony of Lechner that the quality of the time that the father spent with the child was important. The court determined that weekend visitation was not in the child's best interest because it required a trip of 165 miles each way, which was not quality time to be spent with the child. The court determined that providing four-day weekend visits on the holidays specified, the Christmas season visit, and the 2 separate weeks of visitation during the summer would give the father a chance to form a bonding relationship with the child under the best of circumstances. These findings of the District Court were well within its discretion, and may not be set aside by us unless clearly erroneous. Rule 52, M.R.Civ.P.

Again the father has not convinced us that a different result would occur with respect to visitation if the District Court had applied the sections relating to visitation in marital dissolution disputes instead of the best interest test under the paternity case provisions. These statutes are not in discord.

III

The father's final issue is that the application of the paternity case statutes in determining custody and visitation instead of the statutes under the marital dissolution section of the code deprives him of equal protection of the law. There is no merit to this contention. He has been granted a full hearing as to the best interests of the child in determining custody and his right of visitation and the

- 8 -

controlling test under each set of statutes is the best interest of the child.

IV

Accordingly, the judgment of the District Court is affirmed.

_John C. Sheehy_
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_L. C. Gulbrandson_

_Fred J. Weber_

Justices

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

DISSENT OF MR. JUSTICE DANIEL J. SHEA

No. 84-156

SCHUMAN v. BESTROM

DATED: *January 6, 1985*

FILED

JAN 6 - 1985

*Ethel M. Harrison*

CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea, dissenting:

I dissent. The crucial concern in reviewing application of the best interests of the child standard is to ensure that the determination truly was in the child's best interest. Section 40-4-212, MCA, provides the tests for determining the best interest. The statute is not based on the prerequisite of a valid marriage, and rightly so, because the marital status of a child's parents is both irrelevant and often in a state of change or turmoil when the need arises to make the determination.

Section 40-6-116(3), MCA, provides no best interest criteria to apply in establishing the existence of the parent-child relationship. Further, the statute does not even require a best interest determination to be made even though judges perhaps customarily use this boilerplate language without ever considering what it truly means. The statute is totally insufficient to ensure the proper best interest criteria will be applied--if they are considered at all. Further, section 40-6-116(3), though it does not refer to section 40-4-212, has no need to duplicate the criteria set forth in section 40-6-116(3).

We ruled in Markegard v. Markegard (Mont. 1980), 616 P.2d 323, 37 St.Rep. 1539 that in determining child custody, trial courts must consider the statutory criteria set forth in § 40-4-212, MCA. In that case, the trial court's statements were nothing more than conclusory statements, not reflecting the evidentiary basis for the decision.

It is an axiomatic principle that the welfare of a child, that is, the best interest of the child, is the prime

factor that must apply to illegitimate as well as legitimate children. 10 Am.Jur.2d *Custody of Child*, § 60. If the inquiry is the same, and if no presumption exists against the father, no reason exists for the failure to apply the statutory criteria in section 40-4-212, for it is this statute that sets out the applicable factors that must be weighed in reaching a custody decision.

In Bazemore v. Davis (D.C. App. 1978), 394 A. 2d 1377, the Court held that in custody disputes between natural parents of illegitimate children (some authority says there are never illegitimate children, just illegitimate parents) the standard to be applied is the best interest of the child without regard to any presumption against the father. The Court reversed a trial court decision that in effect concluded that a fit mother could never be deprived of custody. The Court held:

> "[T]he trial courts shall decide the delicate question of what is the child's best interests solely by reference to the facts of the particular case without resort to the crutch of a presumption in favor of either party."

In Com. ex rel. Scott v. Martin (Pa. Super. 1977), 381 A.2d 173, the Court expressly stated that the best interest of the child in these situations is the overriding factor that must govern the outcome:

> "It is therefore apparent that when parents dispute about which one of them should have custody of their illegitmate child, the hearing judge is obliged to satisfy two distinct, although overlapping, claims. First, the judge must satisfy each parent's claim to be treated as equal to the other. The judge must start his examination of the case on this basis; he therefore must not discriminate against the father--or the mother--simply because the child is illegitimate. Second, the judge must satisfy the child's claim to have the decision made according to the child's best interest. It is at this point that the claims overlap. If the judge starts his examination of the case by discriminating against the father, not

only does he treat the father unfairly but <u>he also</u> <u>treats the child unfairly, for he has improperly narrowed the definition of what disposition might be in the child's best interest</u>"  (Emphasis added.) [The Court in <u>Martin</u> vacated the order and remanded for appropriate findings.]

Here, the trial court's limitation of custody consideration to § 40-6-113(3), MCA, effectively worked a presumption in favor of the mother, the custodial parent. Here, as was the case in <u>Martin</u>, treating the father unfairly also treats the child unfairly. That is not the child's best interests. This matter should be remanded for a determination of best interest of the child, based on the criteria set forth in § 40-4-212, MCA.

_____
Justice