JUSTICE ERDMANN
dissenting.
I join the majority’s opinion on Issue 1. I respectfully dissent, however, on Issue 2.
The majority concludes that Sage not only has a statutory right to personally appear before the Board, but also that his constitutional right to due process was violated when he was denied the opportunity to personally appear before the Board upon his parole application. The majority reaches this conclusion by first applying a narrow statutory analysis to § 46-23-202, MCA (1981), which effectively ignores the remaining statutory scheme as set forth by the Montana Legislature. The majority then changes tack and undertakes an expansive constitutional analysis involving Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (1979), 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668. The majority relies on Greenholtz to resolve issues which the United States Supreme Court explicitly declined to address in that case.
We have consistently held that when several statutes apply to a given situation, if it is at all possible, a construction is to be adopted as will give effect to all. City of Bozeman v. Racicot (1992), 253 Mont. 204, 208-09, 832 P.2d 767, 769; Schuman v. Bestrom (1985), 214 Mont. 410, 415, 693 P.2d 536, 538; § 1-2-101, MCA.
It is good statutory construction law that where one part of the law deals with a subject in general and comprehensive terms, while another part of it deals in a more minute and definite way, the two parts should be read together and, if possible, harmonized, with a view to giving effect to a consistent legislative policy.
Schuman, 693 P.2d at 539.
Contrary to the statutory arguments presented by the majority, I am not convinced that the Board’s use of its executive secretary, Craig Thomas, to conduct the parole eligibility interview, or Sage’s failure to personally appear before the Board, violated any statutory provisions. Thomas was designated by the Board to conduct Sage’s parole eligibility interview. Section 46-23-104(4), MCA(1981), provides that:
The board may designate one of its members, one of its staff members, or any other adult correctional releasing authority to conduct interviews relative to:
(a) parole eligibility;
(b) plans for release on parole; or
*470 (c) revocation hearings.
Thomas serves as the Montana Board of Pardon’s Executive Secretary, which is a position defined as a “staff member” by Rule 20.25.101(2), ARM. Thus § 46-23-104(4), MCA (1981), allows the Board to delegate the prisoner’s interview, as provided for in § 46-23-202, MCA (1981), to Thomas as a “staff member.” The Board’s utilization of Thomas to conduct the parole eligibility interview was therefore clearly within statutory constraints.
The majority glosses over § 46-23-104(4), MCA (1981), by inferring that the Board’s authority to designate an individual under this section is limited to a “pre-hearing interview.” The plain language of this section simply does not limit the interview which may be conducted by a designated individual to a pre-hearing interview. Section 46-23-104(4), MCA (1981), refers to interviews relative to parole eligibility, which is exactly what is at issue in this case and includes the interview which is provided for in § 46-23-202, MCA (1981).
In addition, the majority asserts that interpreting § 46-23-104(4), MCA (1981), to apply to § 46-23-202, MCA (1981), creates a contradiction between that statute and the language of the Board’s administrative rule which requires that an informal interview “before the board” shall be “conducted ... under the direction of the chairman” of that Board. Rule 20.25.401, ARM. We have recognized that the Legislature, in enacting law, is presumed to have knowledge of the existing law. Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 866 P.2d 218. The same role can be applied to an administrative agency when adopting rules, as rules which conflict with statutory requirements are invalid. Section 2-4-305(6), MCA; Taylor v. Taylor (1995), 272 Mont. 30, 36, 899 P.2d 523, 526. When Rule 20.25.401, ARM, was adopted by the Board, § 46-23-104(4), MCA, was in effect and we can presume the Board was aware of its provisions. The rule must therefore be construed in light of § 46-23-104(4), MCA, which allows a designated individual to conduct parole interviews. There simply is no contradiction between the statutory scheme and the administrative rule.
Furthermore, the 1981 parole eligibility statutory scheme provides that the Board shall be required to hear oral statements from all persons desiring to be heard. Section 46-23-204, MCA (1981), provides:
The board shall be required to hear oral statements from all persons desiring to be heard before the board, and any person may be represented by counsel, provided that the board shall have the power to regulate procedure at all hearings.
*471 (Emphasis added.) It cannot be disputed that the language, “all persons desiring to be heard” includes parole applicants, particularly given the right to be represented by counsel. The record does not reflect that Sage exercised his statutory right to be personally present at a hearing before the Board under this section by requesting or expressing a desire to make an oral statement before the Board. Thus, I would determine that Sage’s personal appearance at his interview was sufficient to meet the statutory requirements.
The majority next asserts that Sage’s constitutional right to due process was violated when his personal appearance was before an individual designated by the Board and not before the Board itself. The majority argues that it is reasonable to infer from Greenholtz, 442 U.S. 1, 99 S.Ct. 2100, 606 L.Ed.2d 668, that the opportunity of a parole applicant to appear before the Board itself is an important element of the due process to which the applicant is entitled. The majority, however, concedes that the United States Supreme Court did not directly address this issue in Greenholtz since a personal appearance before the board is a statutory requirement in Nebraska. Its reliance on Greenholtz for this proposition is thus misplaced. The United States Supreme Court stated that due process requires that the inmate be provided with an effective opportunity to insure that the records before the Board are in fact the records relating to his case and that he be provided with the opportunity to present any special considerations demonstrating why he is an appropriate candidate for parole. Greenholtz, 442 U.S. at 15, 99 S.Ct. at 2107-08.
In this case, Sage was provided with a personal parole eligibility interview and was provided the opportunity to request a personal hearing before the Parole Board under the provisions of § 46-23-204, MCA (1981). He had the opportunity to correct the record relating to his case. He was allowed to present oral testimony and have other witnesses testify on his behalf. The Board considered the pre-parole investigation report, written statements, and Thomas’s recommendation. Because he was afforded these opportunities and was provided with a written statement setting forth the reasons for the Board’s denials of parole, Sage was provided with due process, as required by both the Montana and United States Constitutions, and there was no deprivation of a constitutionally protected interest.
I would reverse the District Court on this issue.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY join in the foregoing dissenting opinion.