DA 07-0311

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 190

MONTANA SPORTS SHOOTING ASSOCIATION,
INC., and GARY S. MARBUT,

      Plaintiffs and Appellants,

  v.

STATE OF MONTANA, MONTANA
DEPARTMENT OF FISH, WILDLIFE,
AND PARKS,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 07-154
                Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Quentin M. Rhoades, Sullivan, Tabaracci & Rhoades, Missoula, Montana

      For Appellees

            Robert N. Lane, John F. Lynch, and Rebecca Jakes Dockter, Montana
            Department of Fish, Wildlife and Parks, Helena, Montana

                  Submitted on Briefs:  January 23, 2008

                           Decided:  June 3, 2008

Filed:

                          _____
                                Clerk
Justice Brian Morris delivered the Opinion the Court.

¶1     Montana Sports Shooting Association, Inc., and Gary S. Marbut (Marbut) appeal from an order of the Fourth Judicial District, Missoula County, denying Montana Sports Shooting Association's motion for summary judgment.  We affirm.

¶2     Montana Sports Shooting Association presents the following issue on appeal:

¶3     *Whether the District Court properly determined that the Montana Department of Fish, Wildlife, and Parks (FWP) did not violate the statutory prohibition against political activity under § 87-1-204, MCA.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     The Montana Sports Shooting Association is a Montana non-profit corporation.  Gary Marbut is the Montana Sports Shooting Association's president.  We will refer in this opinion to Montana Sports Shooting Association and Gary Marbut collectively as "MSSA" for purposes of clarity.  MSSA asserts that it lobbies the Montana Legislature to protect its members' rights and interests.  MSSA alleges that FWP's competing lobbying efforts often conflict with its own lobbying efforts.  MSSA filed a complaint for declaratory judgment and a request for preliminary and permanent injunction in the District Court.  MSSA requested a declaratory judgment that FWP may not lobby the Legislature, may not appear before it as either a proponent or opponent of proposed legislation, or otherwise act to influence legislative decisions.

¶5     MSSA relied on the language in § 87-1-204, MCA, concerning the political activity of FWP employees, that provides

2

While retaining the right to vote as he may please and to express his opinions on all political questions, no employee of [FWP] may use his official authority or influence for the purpose of interfering with an election or affecting the results thereof or for the purpose of coercing or influencing the political actions of any person or body.

MSSA argued that this prohibition on FWP employee political activity includes lobbying the Legislature or its members and appearing before legislative committees to represent FWP's position on proposed legislation. FWP responded that the Legislature intended § 87-1-204, MCA, to cover only political elections, like the general prohibition on public employees' political activity under § 2-2-121, MCA, and § 13-35-226, MCA.

¶6 MSSA moved for summary judgment. MSSA supported the motion with an affidavit submitted by Marbut. Marbut's affidavit noted specific instances in which FWP employees had testified in support of a proposed senate bill and otherwise had attempted to influence the Legislature. FWP admitted that it routinely lobbies the Legislature and that its employees appear at legislative hearings. MSSA contended that the plain language of § 87-1-204, MCA, expressly placed stricter limitations on FWP political activity than the general limitations placed on the public employees of other executive agencies. FWP countered that canons of statutory construction and long-standing FWP practice support its contention that § 87-1-204, MCA, does not result in stricter limitations.

¶7 The District Court examined the history of statutory limitations on FWP political activity. The court examined the meaning of the word "politics" and its treatment in other jurisdictions. The court also examined the operation of other Montana and federal statutes limiting executive political activity. The court concluded that MSSA's interpretation would

3

restrict too narrowly FWP's internal and external activities. The District Court denied MSSA's motion for summary judgment. Although not stated expressly, the court's order, in effect, granted summary judgment to FWP. Neither party asserted that any genuine issue of material fact precluded summary judgment. Consistent with this interpretation, FWP filed a notice of entry of judgment. MSSA appeals.

## STANDARD OF REVIEW

¶8 We review de novo a district court's decision to grant summary judgment, using the criteria applied by the district court under M. R. Civ. P. 56. *Farmers Co-op. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 24, 339 Mont. 445, ¶ 24, 171 P.3d 690, ¶ 24. A district court properly grants a motion for summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Farmers Co-op.*, ¶ 24.

## DISCUSSION

¶9 *Whether the District Court properly determined that FWP did not violate the statutory prohibition against political activity under § 87-1-204, MCA.*

¶10 The parties disagree over the proper interpretation of the term "political actions" under § 87-1-204, MCA. MSSA argues that "political actions" clearly and unambiguously applies to the activities of FWP and its employees before the Legislature. MSSA cites to *Black's Law Dictionary* for the proposition that "political actions" broadly means "of or relating to the conduct of government." *Black's Law Dictionary* 1196 (Bryan A. Garner ed., 8th ed., West 2004). MSSA asserts that we must construe the statute's prohibition on "coercing or influencing the political actions of any person or body" as prohibiting FWP

4

from lobbying the Legislature, appearing before it as a proponent or opponent of legislation, or otherwise influencing the decisions of legislative members. FWP contends that "political actions" relates only to political elections.

¶11 We interpret a statute first by looking to its plain language. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, ¶ 11, 152 P.3d 1288, ¶ 11. We construe a statute by reading and interpreting the statute as a whole, "without isolating specific terms from the context in which they are used by the Legislature." *City of Great Falls v. Morris*, 2006 MT 93, ¶ 19, 332 Mont. 85, ¶ 19, 134 P.3d 692, ¶ 19 (citation omitted). We will not interpret the statute further if the language is clear and unambiguous. *Letasky*, ¶ 11. We look to legislative intent if the language is not clear and unambiguous, and give effect to the legislative will. *Letasky*, ¶ 11. Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it. *Letasky*, ¶ 11. We must harmonize statutes relating to the same subject, as much as possible, giving effect to each. *Yellowstone Federal Credit Union v. Daniels*, 2008 MT 111, ¶ 18, 342 Mont. 451, ¶ 18, 181 P.3d 595, ¶ 18.

¶12 Section 87-1-204, MCA, provides no clear or unambiguous meaning for the phrase "political actions." The statute first addresses an FWP employee's attempts to influence or interfere with elections in the course of their employment with FWP. Section 87-1-204, MCA. The language at issue, contained in the statute's final clause, prohibits FWP employees from using their "official authority or influence . . . for the purpose of coercing or influencing the political actions of any person or body." Section 87-1-204, MCA.

5

¶13    MSSA urges this Court to construe the modifier "political" to connote all activities "of or relating to the conduct of government." MSSA argues that the plain meaning of the phrase "political actions" includes lobbying and testifying before the Legislature, as well as attempts to influence individual legislators. In fact, MSSA reads § 87-1-204, MCA, as prohibiting any FWP employee from influencing any action relating to the conduct of any governmental body. We decline to adopt MSSA's interpretation.

¶14    MSSA's broad interpretation of § 87-1-204, MCA, would conflict directly with the numerous statutory obligations imposed on FWP. For example, in 1987, more than sixty years after the Legislature enacted the initial version of § 87-1-204, MCA, the Legislature commanded that FWP "shall *report to the fish and game committee of each house* of the legislature concerning upland game bird enhancement activities undertaken . . . together *with any recommendations* concerning the operation of the program." Section 87-1-250, MCA (emphasis added). MSSA's interpretation of § 87-1-204, MCA, would bar FWP employees from fulfilling this statutory duty. More recently, the Legislature in 1995 enacted § 87-1-272, MCA. This statute, likewise, requires FWP to "present a detailed report to each regular session of the legislature . . ." regarding the progress of the future fisheries improvement program. Section 87-1-272, MCA (1995). MSSA's interpretation of § 87-1-204, MCA, once again, would prohibit FWP from fulfilling its statutory obligations to report to the legislature with this information. *See also* § 87-5-107, MCA (authorizing FWP to propose specific legislation for the purpose of expanding the State's list of endangered species).

6

¶15 We must presume in construing these statutes that the Legislature intended to make some change in existing law by passing it. *Cantwell v. Geiger*, 228 Mont. 330, 333-34, 742 P.2d 468, 470 (1987). MSSA's interpretation of § 87-1-204, MCA, would render these later-enacted statutes idle acts. We must presume that the Legislature would not pass useless or meaningless legislation. *Oster v. Valley County*, 2006 MT 180, ¶ 17, 333 Mont. 76, ¶ 17, 140 P.3d 1079, ¶ 17.

¶16 MSSA's argument regarding political actions would not be limited, moreover, to a particular branch of government, or a particular kind of governmental conduct. MSSA's interpretation would prevent FWP and its employees from fulfilling the agency's statutory obligations to cooperate and make agreements with other state agencies, federal agencies, tribes, and state and local governments. For example, § 87-1-279, MCA, provides that FWP "shall *promote* the use of publicly owned land . . ." for shooting ranges and "may negotiate with federal, state, and local agencies *to encourage* land trades . . . ." (Emphasis added). Section 87-1-216, MCA, provides that FWP "shall consult and cooperate with the department of livestock . . ." regarding bison management. Finally, § 87-1-201(9)(a)(iii), MCA, provides that FWP "shall . . . *request* that land management agencies open public lands and public roads . . ." when implementing an elk management plan. (Emphasis added). MSSA's interpretation of § 87-1-204, MCA, would bar FWP from fulfilling its extensive list of statutory obligations to influence the decisions of other governmental organizations. *See e.g.* § 87-1-257, MCA (requiring FWP to work cooperatively with state, local, private, tribal, and federal organizations in administering the river restoration program); § 87-5-504, MCA

7

(FWP shall provide recommendations to state, county, municipal, or other Montana agencies to eliminate adverse effects to fish and game habitat when reviewing project applications); § 23-2-641, MCA (requiring the attorney general, upon the request of FWP, to sue to recover snowmobiling penalties).

¶17    Indeed, MSSA's interpretation of "political actions," when read together with the statute's application to *any* body, would prohibit FWP employees from influencing any action within FWP itself. This interpretation would eliminate FWP's ability to make policy decisions and carry out executive branch mandates. MSSA's interpretation would limit FWP to conducting only the most basic, clerical functions. This interpretation of § 87-1-204, MCA, would render FWP unable to perform its statutorily mandated obligations. We decline to adopt an interpretation that leads to such an absurd result. *Letasky*, ¶ 11.

¶18    The Dissent similarly urges an untenable construction of § 87-1-204, MCA. The Dissent contends that, at the very least, "influencing the political action" includes "lobbying the Legislature, appearing before it as a proponent or opponent of legislation, and otherwise influencing the decisions of individual legislators . . . ." Dissent, ¶ 20. The Dissent provides no outer limit, however, to its plain meaning construction of the phrase "influencing the political actions." The Dissent's interpretation provides no "at most" stopping point that defines the scope of restrictions on FWP employees set forth in § 87-1-204, MCA.

¶19    The Dissent concedes that the employees of executive agencies need to lobby and testify before the Legislature. Dissent, ¶ 19. The Dissent acknowledges that construing § 87-1-204, MCA, as a prohibition on FWP's ability to influence legislative members makes

8

no sense. Dissent, ¶ 19. The Dissent nevertheless would construe the statute in a manner that precludes FWP from fulfilling its necessary and statutorily mandated obligations to report and make recommendations to the legislature. The Dissent's plain language construction of the statute leads to absurd results.

¶20     We must construe § 87-1-204, MCA, in a manner that avoids the absurd result that stems from the interpretation urged by MSSA and the Dissent. *Letasky*, ¶ 11. In an effort to harmonize § 87-1-204, MCA, with statutes relating to the same subject, we examine the statute and its terms in their legislative context and attempt to give effect to the legislative will. *Yellowstone Federal Credit Union*, ¶ 18; *City of Great Falls*, ¶ 19. The structure and language within § 87-1-204, MCA, provide no clear guidance, however, regarding the proper construction of "political actions." The statute's last clause does not limit inherently the phrase "political actions" to any particular kind of government conduct.

¶21     Section 87-1-204, MCA, is a unique statute. No other Montana statute or case refers to a public employee's ability to "coerce" or "influence" "political actions." Montana law nowhere else singles out the political activity of a specific executive agency. Section 13-35-226, MCA, sets forth general limitations that govern the political activity of other agency employees. Montana law prohibits public employees, in the course of their employment, from soliciting support for, or opposition to, a political candidate or issue, or lobbying on behalf of another organization. Sections 13-35-226(4), 2-2-121, MCA.

9

¶22     The Legislature has amended § 87-1-204, MCA, several times since it was originally codified at § 3658, RCM, in 1921.  The statute always has contained, however, the essential components at issue.  Section 3658 originally provided:

> While retaining the right to vote as he may please, and to express his opinions on all political questions, no Fish and Game Warden or Deputy shall take any active part in political management or political campaigns, nor shall he use his official authority or influence for the purpose of interfering with an election, or effecting the results, thereof, or *for the purpose of coercing or influencing the political actions of any person or body.*  Section 3658, RCM (1921) (emphasis added).

¶23     This Court examined the 1921 version of the statute in *State v. Sullivan*, 98 Mont. 425, 40 P.2d 995 (1935).  *Sullivan* concerned out-going Governor Erickson's appointment of several fish and game commissioners.  Erickson appointed four men to the commission in 1932 to serve in staggered terms through 1936.  *Sullivan*, 98 Mont. at 434-35, 40 P.2d at 996.  Erickson resigned and F.H. Cooney replaced him as governor in 1933.  *Sullivan*, 98 Mont. at 435, 40 P.2d at 996.  Governor Cooney revoked Erickson's appointments and removed the appointees in 1934.  Governor Cooney appointed his own candidates.  Both Erickson's and Cooney's appointees claimed to be the rightful office-holders.  *Sullivan*, 98 Mont. at 436, 40 P.2d at 996-97.

¶24     The sole issue before the Court in *Sullivan* concerned whether the Governor had authority to remove Erickson's appointees without notice and opportunity to be heard in their defense.  *Sullivan*, 98 Mont. at 437, 40 P.2d at 997.  The Court looked in part to legislative intent to reach its conclusion.  The Court examined the history of FWP and the statutes that governed the agency.  *Sullivan*, 98 Mont. at 442, 40 P.2d at 999-1000.  The Court determined

10

that the Legislature had enacted § 3658, RCM, to ensure that FWP is "at all times . . . [made up of] a majority of experienced members--a continuing body removed from political control and manipulation." *Sullivan*, 98 Mont. at 443, 40 P.2d at 1000. The Court concluded that the statute "clearly denotes the intention of the Legislature to remove [FWP] from the control of the Governor . . . ." *Sullivan*, 98 Mont. at 443, 40 P.2d at 1000. The District Court in this case determined, in light of *Sullivan*, that the Legislature intended § 87-1-204, MCA, to remove FWP and its employees from the influence of "partisan politics."

¶25 We previously have looked to other jurisdictions having similar statutes to guide our interpretation in the absence of sufficient Montana law on an issue. *E.g. In re Custody and Parental Rights of A.P.*, 2007 MT 297, ¶ 24, 340 Mont. 39, ¶ 24, 172 P.3d 105, ¶ 24. The U.S. Supreme Court has encountered language similar to the language in § 87-1-204, MCA, in decisions upholding federal and state restrictions on employees' political activities. The Court upheld an early Congressional provision that prohibited federal employees from giving a "thing of value for political purposes." *Ex Parte Curtis*, 106 U.S. 371, 1 S. Ct. 381 (1882).

¶26 Congress enacted the Civil Service Act of 1883 a year after *Curtis*, and, in language nearly identical to that of § 87-1-204, MCA, prohibited employees from using their "official authority or influence to coerce the political action of any person or body." Civil Service Act of 1883, ch. 27, 22 Stat. 403, 404 (1883). The Court cited the Civil Service Act as part of a movement "against the mixing of partisan politics . . ." when it reaffirmed the constitutionality of the Hatch Act, Congress's most comprehensive regulation of the political activities of federal employees. *U.S. Civil Service Com'n v. National Ass'n of Letter*

11

*Carriers*, 413 U.S. 548, 557-58, 93 S. Ct. 2880, 2886-87 (1973). The Court determined in *Letter Carriers* that the congressional and executive regulations of federal employees targeted partisan political activities. *Letter Carriers*, 413 U.S. at 564, 93 S. Ct. at 2889-90.

¶27 The Court, on the same day that it decided *Letter Carriers*, upheld an Oklahoma statute modeled after the Hatch Act, in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908 (1973). The Court upheld Oklahoma's prohibition on employee "assessment[s], subscription[s], or contribution[s] for any . . . political purpose." *Broadrick*, 413 U.S. at 603 n. 1, 93 S. Ct. at 2911 n. 1. The Court upheld the Oklahoma statute insofar as it forbid partisan political associations. The Court took additional support from the Oklahoma Attorney General's interpretation of the statute as restricting only "clearly partisan political activity." *Broadrick*, 413 U.S. at 617, 93 S. Ct. at 2918-19.

¶28 The Court determined that Congress intended restrictions on the political activities of federal employees to refer to employee involvement in partisan politics. *Letter Carriers*, 413 U.S. at 564, 93 S. Ct. at 2889-90. The Court emphasized in *Letter Carriers* the fact that Congress had exempted from regulation "nonpartisan political activity . . . not identified with national or state political parties . . . including issues with respect to constitutional amendments, referendums, approval of municipal ordinances, and the like." *Letter Carriers*, 413 U.S. at 575-76, 93 S. Ct. at 2895-96.

¶29 *Letter Carriers* and *Broadrick* comport with this Court's determination in *Sullivan* that the Legislature enacted § 87-1-204, MCA, to "remove[] [FWP] from political control

12

and manipulation." *Sullivan*, 98 Mont. at 443, 40 P.2d at 1000. The Court's construction of the federal and state restrictions on employees' political activities supports the District Court's decision to limit the phrase "political actions" to partisan politics. Limiting the statute's reach to partisan politics also avoids the absurd result logically emanating from the broad definition of "political actions" urged by MSSA and the Dissent. *Letasky*, ¶ 11.

¶30 We conclude that the statutory prohibition on using "official authority or influence . . . for the purpose of coercing or influencing the political actions of any person or body," under § 87-1-204, MCA, applies to FWP employees only in the partisan political sense. *Sullivan*, 98 Mont. at 443, 40 P.2d at 1001. The District Court properly determined that § 87-1-204, MCA, does not prohibit FWP employees from lobbying the Legislature or appearing before it as proponents or opponents of legislation. *Farmers Co-op*, ¶ 24.

¶31 We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson, dissenting.

13

¶32 I dissent.

¶33 Section 87-1-204, MCA, states as follows:

> **Political activity of employees.** While retaining the right to vote as he may please and to express his opinions on all political questions, no employee of the department [of fish, wildlife, and parks] may use his official authority or influence for the purpose of interfering with an election or affecting the results thereof or for the purpose of coercing or influencing the political actions of any person or body.

¶34 In construing this statutory language, I begin with three fundamental canons of statutory construction. First, "[i]n construing a statute, this Court will look first to the language used. If the statutory language is clear and unambiguous, the statute speaks for itself and there is nothing left for the Court to construe." *Mont. Contractors' Ass'n v. Dept. of Highways*, 220 Mont. 392, 394, 715 P.2d 1056, 1058 (1986); *accord Miller v. District Court*, 2007 MT 149, ¶ 38, 337 Mont. 488, ¶ 38, 162 P.3d 121, ¶ 38. Second, in the construction of a statute, this Court's job is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Lastly—and this principle follows from the other two—we may not create an ambiguity where none exists, nor may we rewrite a statute, by ignoring clear and unambiguous language, in order to accomplish what we may feel is a more sensible or palatable purpose. *See State ex rel. Palagi v. Regan*, 113 Mont. 343, 351-52, 126 P.2d 818, 824 (1942); *cf. Heggem v. Capitol Indem. Corp.*, 2007 MT 74, ¶ 22, 336 Mont. 429, ¶ 22, 154 P.3d 1189, ¶ 22.

14

¶35    With these principles in mind, § 87-1-204, MCA, clearly and unambiguously prohibits the following:  use by an FWP employee of his or her official authority or influence (1) "for the purpose of interfering with an election or affecting the results thereof" or (2) "for the purpose of coercing or influencing the political actions of any person or body."  At issue in this case is the second clause, i.e., the prohibition on "coercing or influencing the political actions of any person or body."  MSSA contends that this clause prohibits FWP employees from lobbying the Legislature, appearing before it as a proponent or opponent of legislation, and otherwise influencing the decisions of individual legislators.

¶36    It is patently obvious that each of these activities falls under the rubric of "influencing the political actions of any person or body."  This conclusion is supported by the commonly understood meanings of the relevant terms.  "Action" is "[t]he process of doing something" or "[a] thing done."  *Black's Law Dictionary* 31 (Bryan A. Garner ed., 8th ed., West 2004).  "Political" means "[p]ertaining to politics; of or relating to the conduct of government."  *Black's Law Dictionary* 1196.  Correspondingly, a "political action" is something done in relation to politics or the conduct of government—e.g., voting for or against a particular measure.  "Lobby" means:

> **1.** To talk with a legislator, sometimes in a luxurious setting, in an attempt to *influence* the legislator's vote <she routinely lobbies for tort reform in the state legislature>.  **2.** To *support or oppose* (a measure) by working to *influence* a legislator's vote <the organization lobbied the bill through the Senate>.  **3.** To try to *influence* (a decision-maker) <the lawyer lobbied the judge for a favorable ruling>.

*Black's Law Dictionary* 956 (emphases added, citation omitted).

15

¶37 Notably, the definition of "lobby" is synonymous with the conduct proscribed by § 87-1-204, MCA, namely, "influencing the political actions of any person or body." It cannot reasonably be argued that "a legislator's vote" on a measure is not a "political action." Accordingly, MSSA is correct that § 87-1-204, MCA, prohibits FWP from lobbying the Legislature, appearing before it as a proponent or opponent of legislation, or otherwise influencing the decisions of individual legislators.

¶38 The Court tacitly concedes this point, acknowledging that § 87-1-204, MCA, "does not limit inherently the phrase 'political actions' to any particular kind of government conduct." Opinion, ¶ 20. Nevertheless, apparently not willing to accept the clear mandate of § 87-1-204, MCA, the Court decides that the statute does not quite mean what it says. The Court's approach in this regard is reminiscent of the exchange between Alice and Humpty Dumpty:

> "I don't know what you mean by 'glory,' " Alice said.
> Humpty Dumpty smiled contemptuously, "Of course you don't—till I tell you. I meant 'there's a nice knock-down argument for you'!"
> "But 'glory' doesn't mean 'a nice knock-down argument,' " Alice objected.
> "When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

Lewis Carroll, *Alice Through the Looking-Glass* 128 (Candlewick Press 2005) (originally published in 1871 as *Through the Looking-Glass and What Alice Found There*). Reflecting a similar philosophy, the Court proclaims that "political actions" means just what this Court chooses it to mean: "partisan politics," which we are told does not include lobbying the Legislature or appearing before it as proponents or opponents of legislation. Opinion, ¶¶ 29-30.

16

¶39    To justify its approach, the Court recites a parade of horribles that supposedly would ensue under MSSA's plain-language interpretation of § 87-1-204, MCA.  Specifically, the Court opines that under the plain language of the statute, FWP and its employees are prevented from fulfilling various statutory obligations and from conducting anything more than "the most basic, clerical functions."  Opinion, ¶¶ 14, 16 17.  Even if this is true, however, the Court's assumption that we may rewrite a statute because we think that the statute has created an "untenable" situation is incorrect.  The task of rectifying legislatively created "absurdities" falls on the Legislature, not us.

¶40    In any event, the Court's fear that § 87-1-204, MCA, prevents FWP from fulfilling its statutory obligations is unfounded.  We have before us a statute that broadly prohibits FWP employees from using their official authority or influence for the purpose of influencing the political actions of any person or body.  Section 87-1-204, MCA.  The Court[1] has found a number of statutes that arguably are inconsistent with § 87-1-204, MCA.  *See* Opinion, ¶¶ 14, 16.  In such circumstances, our approach is dictated by the following well-settled canons of statutory construction.

¶41    First, the Legislature is presumed to act with deliberation and with full knowledge of all existing laws on a subject; as a result, it is further presumed that the Legislature does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable.  *Ross v. City of Great Falls*, 1998 MT 276, ¶

---

[1] This theory relied on by the Court in reaching its holding was not argued by FWP in its appellate briefs.  Rather, it has been created by the Court from whole cloth.

17, 291 Mont. 377, ¶ 17, 967 P.2d 1103, ¶ 17.  Second, it is our duty to reconcile statutes if it appears possible to do so, consistent with legislative intent.  *Fletcher v. Paige*, 124 Mont. 114, 119, 220 P.2d 484, 487 (1950).  Third, when there is a statute dealing with a subject in general and comprehensive terms, and another statute dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, as much as possible, giving effect to each.  *State ex rel. Boone v. Tullock*, 72 Mont. 482, 486, 234 P. 277, 278-79 (1925); *Schuman v. Bestrom*, 214 Mont. 410, 415, 693 P.2d 536, 538-39 (1985); *Oster v. Valley County*, 2006 MT 180, ¶ 17, 333 Mont. 76, ¶ 17, 140 P.3d 1079, ¶ 17. Lastly, where a specific statute conflicts with a general statute and cannot be harmonized to give effect to both, the specific statute controls over the general statute "to the extent of the inconsistency."  *State v. Langan*, 151 Mont. 558, 564, 445 P.2d 565, 568 (1968); *accord Matter of Williams*, 219 Mont. 6, 9, 709 P.2d 1008, 1010 (1985); *see also* § 1-2-102, MCA ("When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it."); *State ex rel. Special Road Dist. No. 8 v. Mills*, 81 Mont. 86, 98, 261 P. 885, 890 (1927) ("Where the special statute is later, it will be regarded as an exception to or qualification of the prior general one." (internal quotation marks omitted)).

¶42    The Court points out that FWP is required by §§ 87-1-250 and -272, MCA, to report on specific matters to the Legislature, Opinion, ¶ 14; that FWP is authorized by § 87-5-107, MCA, to propose legislation related to a specific subject matter (namely, endangered species), Opinion, ¶ 14; that FWP is authorized or required by §§ 87-1-279, 216, and -257,

18

MCA, to negotiate, consult, or cooperate with specific agencies on specific matters, Opinion, ¶ 16; and that FWP is authorized or required by §§ 87 1 201(9)(a)(iii), 87-5-504, and 23-2-641, MCA, to make specific requests of, or provide specific recommendations to, specific agencies concerning specific matters, Opinion, ¶ 16.

¶43    Whereas § 87-1-204, MCA, deals with the political activities of FWP employees in general and comprehensive terms, the foregoing statutes cited by the Court deal with a part of the same subject but in a more minute and definite way.  All of these statutes must be read together and harmonized, as much as possible, giving effect to each.  *Boone*, 72 Mont. at 486, 234 P. at 278-79; *Schuman*, 214 Mont. at 415, 693 P.2d at 538-39; *Oster*, ¶ 17.  To the extent one of the specific statutes cannot be harmonized with the general statute (§ 87-1-204, MCA), the specific statute controls, but *only to the extent of the inconsistency.  Langan*, 151 Mont. at 564, 445 P.2d at 568; *Williams*, 219 Mont. at 9, 709 P.2d at 1010.  Applying these rules, I disagree with the Court's assertion that the statutory scheme created by the Legislature is "absurd."  Opinion ¶¶ 17, 19, 20.  The scheme prohibits FWP employees from using their official authority or influence for the purpose of influencing the political actions of any person or body, except as authorized or required by statutes such as those the Court found during its perusal of the Montana Code.

¶44    Rather than attempt to harmonize these statutes, the Court decides simply to insert the word "partisan" into the clear and unambiguous language of § 87-1-204, MCA.  Opinion, ¶ 30.  Such an approach flies directly in the face of our duty "simply to ascertain and declare what is in terms or in substance contained [in the statute], not to insert what has been omitted

19

. . . ." Section 1-2-101, MCA. This rule of construction clearly instructs that this Court may not insert the word "partisan" into § 87-1-204, MCA. The fact that the statute may prohibit a wide range of activities—both partisan and nonpartisan—does not establish that the statute is "absurd." Rather, it establishes that the Legislature intended the statute's reach to be broad and include all such activities, except as otherwise provided in more specific statutes.

¶45 Notably, the Court fails to explain what conduct by an FWP employee would constitute "use [of] his official authority or influence . . . for the purpose of coercing or influencing the [*partisan*] political actions of any person or body." However, the Court's suggestion that the legislative process is anything *but* partisan defies the reality of Montana's Legislature. It is common knowledge that legislators generally vote along party lines in support of, or in opposition to, statutes drafted to implement the planks in the parties' respective platforms. Similarly, the suggestion that lobbyists—of whatever ilk—do not play to this partisan polarization is specious. Consequently, even under the Court's remanufactured version of § 87-1-204, MCA—which applies only to "partisan" political actions—the legislative activities engaged in by FWP and challenged in this case by MSSA are prohibited; and the District Court, therefore, erred in granting judgment in favor of FWP.

¶46 The Court offers one additional justification for its approach—namely, that § 87 1-204, MCA, "provides no clear or unambiguous meaning for the phrase 'political actions.' " Opinion, ¶ 12. Yet, ambiguity presupposes that the language is susceptible to at least two reasonable but conflicting meanings. *See Mary J. Baker Revoc. Trust v. Cenex Harvest*, 2007 MT 159, ¶ 20, 338 Mont. 41, ¶ 20, 164 P.3d 851, ¶ 20; *Missoula High School Legal*

*Defense Ass'n v. Superintendent of Public Instruction*, 196 Mont. 106, 108-12, 637 P.2d 1188, 1189-92 (1981). No such reasonable but conflicting meanings are demonstrated in the Court's Opinion. Indeed, the Court does not even attempt to demonstrate that the term "political actions" is susceptible to more than one reasonable but conflicting meaning—possibly due to the fact that nothing about this term is ambiguous. For this reason, the Court's resort to other sources in order to define "political actions" is unnecessary.

¶47    In this regard, the Court relies on *State ex rel. Nagle v. Sullivan*, 98 Mont. 425, 40 P.2d 995 (1935) (per curiam), to explain the meaning of "political actions." Opinion, ¶¶ 23-24, 29. However, *Nagle* did not involve the issue of whether lobbying and appearing before the Legislature was "political action" within the meaning of § 87-1-204, MCA. Rather, *Nagle* involved a quo warranto proceeding to determine which one of two appointed individuals was lawfully entitled to sit on the State Fish and Game Commission. *See Nagle*, 98 Mont. at 434-37, 40 P.2d at 996-97. The sole issue presented was whether the Governor had authority to remove Sullivan without notice and an opportunity to be heard in his defense. *Nagle*, 98 Mont. at 437, 40 P.2d at 997. Construing §§ 3651 and 3658, RCM (1921),[2] the Court stated simply that the intention of the Legislature was "to remove the Fish and Game Department from the control of the Governor and to create a commission entirely divorced from political

[2] Section 87-1-204, MCA, derives from § 3658, RCM (1921), which provided as follows: "While retaining the right to vote as he may please, and to express his opinions on all political questions, no fish and game warden or deputy shall take any active part in political management or political campaigns, nor shall he use his official authority or influence for the purpose of interfering with an election, or affecting the results, thereof, or for the purpose of coercing or influencing the political actions of any person or body."

21

activity, and of which there will be, at all times, a majority of experienced members—a continuing body removed from political control and manipulation." *Nagle*, 98 Mont. at 443, 40 P.2d at 1000. The Court did not define what "political actions" means, much less conclude that this term did not encompass lobbying and appearing before the Legislature. *Nagle* is inapposite.

¶48 I do agree with the Court that § 87-1-204, MCA, is "unique." Opinion, ¶ 21. The statute is also very clear in prohibiting FWP employees from using their official authority or influence for the purpose of "influencing the political actions of any person or body." Accordingly, it is not necessary to resort to statutes dealing with general limitations governing the political activity of other agency employees or to cases dealing with federal or other states' statutes. *See* Opinion, ¶¶ 21, 25-28. As we stated in *Small v. Board of Trustees*, 2001 MT 181, 306 Mont. 199, 31 P.3d 358, "Montana's teacher tenure statute is not ambiguous. Thus, appeal to policy arguments or decisions from other jurisdictions interpreting different tenure statutes to aid our interpretation of Montana's tenure statute is unnecessary." *Small*, ¶ 22. Likewise, § 87-1-204, MCA, is not ambiguous. Thus, appeal to policy arguments and decisions from other jurisdictions interpreting different political-activity statutes to aid our interpretation of § 87-1-204, MCA, is unnecessary.

¶49 That said, in light of the Court's reliance on decisions from other jurisdictions, I note that in *State ex rel. Green v. City of Cleveland*, 33 N.E.2d 35 (Ohio App. 1940), the court considered a prohibition similar to § 87-1-204, MCA. The prohibition stated: "No person in the service of the city shall use his official authority to influence or coerce the political action

22

of any person or body . . . ." *Green*, 33 N.E.2d at 36. Asking itself, "What is the meaning of the words 'political action' in this sentence?" the court reasoned:

> It seems clear to us that whenever a voter casts his ballot, such an action is "political action," on his part, whether he votes on candidates or for or against some issue submitted on the ballot. Therefore, if any city official should threaten with a loss of his job any employee refusing to vote for or against a special levy, bond issue or charter amendment, such a threat would constitute within the meaning of the above provision an attempt to use the official authority of such official "to influence or coerce the political action" of the employee so threatened.

*Green*, 33 N.E.2d at 37.

¶50 The Ohio court's interpretation of "political action" is no less persuasive than the various interpretations offered by this Court in ¶¶ 25-28 of the Opinion. *Green* supports the proposition that whenever a legislator casts his or her vote with respect to some issue before the Legislature, such an action is a "political action," and if any FWP employee uses his official authority or influence for the purpose of influencing that vote, then the employee is engaged in the conduct proscribed by § 87-1-204, MCA.

¶51 Does § 87-1-204, MCA, make sense? Probably not. Of necessity, the employees of Executive Branch agencies need to lobby and appear before the Legislature on budgetary and legislative issues affecting their operations and the public. No one is denying that. Rather, the point here is that amending or "fixing" § 87-1-204, MCA, is the Legislature's job. It is not this Court's province to interpret the statute in a way that allows what it specifically prohibits, in order to achieve a more palatable result.

23

¶52   In sum, lobbying the Legislature, appearing before it as a proponent or opponent of legislation, and otherwise influencing the decisions of individual legislators are included within the unambiguous proscriptions of § 87-1-204, MCA.  Accordingly, because the plain language of § 87-1-204, MCA, includes the activities of FWP that are challenged by MSSA in this appeal, we should stop there and reverse the District Court's decision.  We need not and should not judicially create an ambiguity where none exists so as to avoid what the statute clearly prohibits.

¶53   I dissent.


                                                             /S/ JAMES C. NELSON